**WAWA DAIRY FARMS, Inc., v. WICKARD, Secretary of Agriculture (INTERSTATE MILK PRODUCERS' CO-OP., Intervener).**

No. 8739.

Circuit Court of Appeals, Third Circuit.

Argued April 5, 1945.

Decided June 5, 1945.

Ellwood J. Turner, of Chester, Pa., for appellant.

W. Carroll Hunter, of Washington, D. C. (Katherine A. Markwell, Atty., Department of Agriculture, of Washington, D. C., Wendell Berge, Asst. Atty. Gen., J. Stephen Doyle, Jr., Sp. Asst. to Atty. Gen., and

Gerald A. Gleeson, U. S. Atty., and James P. McCormick, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for defendant-appellee.

A. Evans Kephart, of Philadelphia, Pa., for intervener.

Before GOODRICH, STEPHENS (ALBERT LEE), and McLAUGHLIN, Circuit Judges.

STEPHENS, Circuit Judge.

Federal Milk Order No. 61, regulating the handling of milk in the Philadelphia marketing area, was issued in 1942 by the Secretary of Agriculture pursuant to authority contained in the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq. Appellant Dairy petitioned the Secretary of Agriculture under § 8c (15) (A) of the Act, 7 U.S.C.A. § 608c (15) (A),[1] for a modification of parts of the order or for a declaration of appellant's exemption from the terms of the order. The Secretary denied the petition, and appellant sued for a review by the district court under § 8c (15) (B) of the Act, 7 U.S.C.A. § 608c (15)(B).[2] The district court found the order "in accordance with law" on motion for summary judgment, and the Dairy appeals. A detailed statement of the case may be found in the opinion of the district court, D.C., 1944, 56 F.Supp. 67.

The milk order attacked herein regulates minimum prices payable by handlers to producers of milk in the defined area. Dependent upon the locations of milk-receiving facilities,[3] certain deductions from the

---

[1] § 8c(15) (A) of the Agricultural Marketing Agreement Act, 7 U.S.C.A. § 608c(15) (A): "Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law."

[2] § 8c(15) (B) of the Agricultural Marketing Agreement Act, 7 U.S.C.A. § 608c(15) (B): "The District Courts of the United States * * * in any

district in which such handler is an inhabitant, or has his principal place of business, are hereby vested with jurisdiction to review in equity such ruling, provided a bill in equity for that purpose is filed within twenty days from the date of the entry of such ruling. * * * If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires. * * * ."

[3] Milk receiving facilities to which Milk Order No. 61 applies are (1) processing and bottling plants and (2) receiving stations. The latter are located in rural areas. They weigh, test, and cool milk delivered to them. They also afford a convenience for producers with reference to times of delivery. The milk is

fixed minimum prices are authorized. Three zones are established; one comprises the territory within 11 miles of the Philadelphia City Hall, one the territory more than 11 but less than 31 miles therefrom, and one the territory more than 31 miles therefrom. No allowances are made for milk-receiving facilities within the first or 0-11 mile zone. For facilities within the 11-31 mile zone a graduated deduction is permitted on a mileage basis to compensate for transportation costs. Deductions of two different types are authorized for plants within the 31 plus mile zone, namely, a *transportation allowance* and a *receiving station allowance*. The latter represents the value of services rendered by the receiving stations.

Appellant maintains a plant for the processing and bottling of milk 18 miles from the City Hall. The milk is transported in bottles 22 miles from its processing plant to a distribution plant within the 11 mile zone. Under milk Order No. 61 in computing the minimum price payable to its producers appellant is entitled to a *transportation allowance* only, but by the instant action it seeks the establishment of its right to deduct the *receiving station allowance*. Specifically, appellant contends that as to it the milk order is arbitrary, unreasonable, discriminatory, and confiscatory in prescribing a *receiving station allowance* only for plants in the 31 plus mile zone because, as it claims, substantial evidence does not support the drawing of the demarcation line at 31 miles. Inadequacy and inequitableness of the *transportation allowance* in the 11-31 mile zone is asserted, and the propriety of adjudging the case by summary judgment is questioned.

According to the custom of the Philadelphia marketing area the producer bears the cost of transporting milk to the market, and the handler bears the cost of processing and distributing. The milk is either "direct shipped" to bottling plants, that is, picked up in cans by trucks and carried on the average of from 30 to 35 miles, or it is delivered to more or less convenient receiving stations. There, the milk is weighed, tested, cooled, and then shipped in tank trucks to the processing and bottling plants. Producers cool the milk "direct shipped" but

ordinarily do not cool milk taken to a receiving station.

Direct shipment of milk has greatly increased with the improvement of highways and motor vehicles, and many receiving stations near the metropolitan area have been abandoned because of the growing practice of directly shipping milk to the processing and bottling plants. There are 47 receiving stations operating under Order No. 61, none of which is within 25 miles of the Philadelphia City Hall and only 2 of which are within the 31 mile zone. There are 6 receiving stations within 31 to 40 miles from the City Hall, and all others are still further away. Of the 78 processing and bottling plants subject to the order, only 3 are more than 31 miles from the City Hall,[4] 39 are within 11 miles, and 36 are 11 to 31 miles therefrom. Within the 16-20 mile area there are 13 bottling plants including that of appellant.

### 31-Mile Line.

Under the terms of § 8c (15) (A) and (B), 7 U.S.C.A. § 608c (15) (A) and (B), a ruling of the Secretary of Agriculture in a proceeding initiated under subsection (A) is "final, if in accordance with law," and upon a review of the ruling the district court may inquire only whether substantial evidence supports the Secretary's findings. Federal Security Administrator v. Quaker Oats Co., 1943, 318 U.S. 218, 228, 63 S.Ct. 589, 87 L.Ed. 724; New York State Guernsey Breeders' Co-op., Inc. v. Wickard, 2 Cir., 1944, 141 F.2d 805, 808.

The fixing of a 31 mile line outside which the *receiving station allowance* may be deducted, and within which the allowance may not be deducted, is supported by substantial evidence. It is not questioned that a line of demarcation must be drawn somewhere, and of course such a line must be reasonable. The evidence substantially supports the court's finding that the 31 mile line as found by the Secretary is reasonable and proper. It reveals that of the 125 plants to which the milk order applies, only 2 receiving stations are located within the 31 mile zone whereas 45 are without it, and only 3 bottling plants are located without it whereas 75 are within it. And

---

further treated at the processing and bottling plants to which it is shipped from the receiving stations. In addition, some handlers, including appellant, maintain in the city area distribution centers to which milk is shipped in bot-

tles from processing plants and from which it is distributed to consumers.

[4] The three bottling plants more than 31 miles from the Philadelphia City Hall are in the 31-40, the 41-50, and the 91-100 mile areas respectively.

as has already been stated, the volume of milk delivered to receiving stations within the 31 mile zone has so greatly decreased that delivery to such stations is now exceptional. By the practice of shipping directly to bottling plants, the *receiving station allowance* is eliminated, netting a higher price to producers. The growth of the direct shipment practice and the correlative decline in the use of the close-in receiving stations demonstrates a very significant decline in the utility of the latter and is convincing evidence that the 31 mile line is founded upon good reason and therefore is not arbitrary.

The evidence shows that much the greater quantity of milk consumed in the Philadelphia marketing area is satisfactorily "direct shipped" an average of 30-35 miles. It appears that no receiving station is economically useful within a radius of 20 miles from a processing plant. There is no dispute that a processing plant within 11 miles of the City Hall should not be entitled to deductions from minimum prices either for transporting or for receiving milk. It would seem to follow that a receiving station to be essential must be some 20 miles or more beyond the 0-11 mile zone or at least 31 miles from the City Hall.

That the utilization of close-in receiving stations is steadily and substantially being lessened negatives appellant's suggestion that direct shipment is inconvenient to producers, and is costly to them because of the added expense of cooling.

Order No. 61 was formulated after an exhaustive hearing by federal authorities at which testimony taken at hearings of the Pennsylvania Milk Control Commission was incorporated. There is no question in our minds that substantial evidence in the case supports Order No. 61 as a proper exercise of the discretion vested in the Secretary of Agriculture. Federal Security Administrator v. Quaker Oats Co., 1943, 318 U.S. 218, 228, 63 S.Ct. 589, 87 L.Ed. 724.

### Discrimination.

■ The *receiving station allowance* does not discriminate against appellant. On the contrary, appellant occupies a position no different from that of the 23 other bottling plants in the 16-31 mile area, or that of the 36 in the 11-31 mile area. The reasonableness of the zone classifications overcomes the claim of unjust discrimination. Appellant, in questioning the administrative order and the Secretary's ruling, has not met the burden which rests upon it of showing such unjust discrimination in classification. United States v. Rock Royal Co-operative, Inc., 1939, 307 U.S. 533, 567-568, 59 S.Ct. 933, 83 L.Ed. 1446; Pacific States Box & Basket Co. v. White, 1935, 296 U.S. 176, 185, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Borden's Farm Products Co., Inc. v. Baldwin, 1934, 293 U.S. 194, 209-210, 55 S.Ct. 187, 79 L.Ed. 281.

### Confiscation.

■ Appellant complains that without the benefit of the *receiving station allowance* it cannot operate its business at a profit, and that therefore the order is confiscatory. Its argument conflicts with the Supreme Court's reasoning in Hegeman Farms Corporation v. Baldwin, 1934, 293 U. S. 163, 55 S.Ct. 7, 79 L.Ed. 259. There a dealer attacked as invalid under the Fourteenth Amendment a New York Milk Control Board order setting a minimum buying and a minimum selling price for milk dealers. The court pointed out that the dealer-appellant alleged only the value of its properties and failed to indicate whether its business was run with reasonable efficiency, how a different price situation would aid it, how other dealers were faring under the prices fixed. The court concluded, 293 U.S. at page 170, 55 S.Ct. 9, 79 L.Ed. 259: "The appellant would have us say that minimum prices must be changed whenever a particular dealer can show that the effect of the schedule in its application to himself is to deprive him of a profit. This is not enough to subject administrative rulings to revision by the courts. If the designation of a minimum price is within the scope of the police power, expenses or losses made necessary thereby must be borne as an incident unless the order goes so far beyond the needs of the occasion as to be turned into an act of tyranny. Nothing of the kind is charged. The Fourteenth Amendment does not protect a business against the hazards of competition." See the parent zoning case of Hadacheck v. Sebastian, 1915, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348, Ann.Cas.1917B, 927.

Consistently and in connection with a federal statute, in Bowles v. Willingham, 1944, 321 U.S. 503, 518, 64 S.Ct. 641, 649, 88 L.Ed. 892, the court declared: "A member of the class which is regulated may suffer economic losses not shared by others. His property may lose utility and depreciate in value as a consequence of regulation. But that has never been a barrier to the

exercise of the police power. [Citing cases.] And the restraints imposed on the national government in this regard by the Fifth Amendment are no greater than those imposed on the States by the Fourteenth. [Citing cases.]"

In the instant case appellant did not prove the fair value of the property used in its milk business but only the amount invested in its property. Nothing appears as to how other handlers survived the price fixing order; appellant alone is contesting the legal status of the order. There is no showing as to appellant's efficient management. The evidence falls far short of proving confiscation. Similarly, appellant has shown no justification for its claim of exemption under § 8c (15) (A) of the Act, 7 U.S.C.A. § 608c (15) (A).

### Transportation Allowance.

■ Substantial evidence supports the adequacy of the *transportation allowance* to plants within the 11-31 mile zone. The allowance is in recognition of the business custom that transportation costs be borne by producers. Under the graduated scale fixed by the milk order appellant's plant, being in the 16-21 mile area, is entitled to a *transportation allowance* of 9¢.

Many of appellant's producers pay 20¢ a hundredweight for the contract hauling of their milk an average of 30 miles to appellant's plant. Adding appellant's 9¢ *transportation allowance,* the total amount to be spent for hauling would be 29¢.

The evidence reveals that appellant's allowance compares favorably with other hauling rates. Many of appellant's producers are located in an area from which milk is "direct shipped" to two city bottling plants for 23¢ and 32¢ per hundredweight respectively, or an average of 27½¢. Milk can be "direct shipped" in cans a distance of 75 miles for 25¢ to 30¢ a hundredweight. The average direct shipment hauling rate for 14,000,000 pounds of milk was 24¢. The major part of the milk was hauled for 25¢ to 30¢. Clearly the *transportation allowance* applicable to appellant is upheld by substantial evidence.

### Summary Judgment.

■ Summary judgment procedure was properly utilized herein. Appellant insists that the instant matter involves genuine issues as to material facts and therefore that under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, its disposition on a motion for summary judgment was error. According to the district court's reasoning, since its decision had to be based on the record before the Secretary of Agriculture and not upon a trial de novo, it could consider that record alone whether the case went to trial or was terminated upon motion for summary judgment. Obviously, the summary judgment was proper.

■ The claim that the Secretary of Agriculture admitted a vital allegation of the complaint has no foundation. The Secretary admitted that appellant complained of the unreasonableness of the milk order but did not admit that the milk order was unreasonable.

The judgment of the district court is affirmed.