**WINDHAM CREAMERY, INC., Plaintiff,**

**v.**

**Orville L. FREEMAN, Secretary of Agriculture, Defendant.**

**No. 957-61.**

United States District Court
D. New Jersey.
April 28, 1964.

Edward W. Currie, Matawan, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., by James D. Butler, Asst. U. S. Atty., Newark, N. J., for defendant.

John A. Campbell, Washington, D.C., for U. S. Government.

COOLAHAN, District Judge.

Both plaintiff and defendant filed cross motions for summary judgment in the above captioned matter. Extensive briefs were submitted and oral argument had at which time the Court took the matter under advisement for further study of the material submitted and to review the voluminous record of the proceedings before the Secretary.

The plaintiff, Windham, brings this action under the provisions of 7 U.S.C.A. § 608c(15) (B) known as the Agricultural Marketing Agreement Act of 1937 (7 U.S.C.A. § 601 et seq). Windham complains that the provisions of Milk Marketing Order No. 27 (now known as No. 2) are illegal and that the provisions of that order are arbitrary and produce a discriminatory result on the plaintiff. The provisions of Order No. 27 herein involved are Section 927.37 headed Classes of Utilization (7 C.F.R. 927.37). Sub-

sections (c) and (d) (1) of this Section are the provisions which plaintiff claims are invalid and beyond the powers of the agency to promulgate. The plaintiff filed a written petition pursuant to 7 U.S.C.A. § 608c(15) (A) with the Secretary of Agriculture and a hearing was held before that body. Exceptions were filed to a report and a recommended order made by the Examiner. This report and order, however, was affirmed by the written opinion of the Judicial Officer. A petition for rehearing, reargument and reconsideration was filed by the plaintiff and denied. As a result of the denial of the relief sought by the plaintiff it now brings this action after fully exhausting the administrative remedies available.

■ The record of the proceedings below has been filed with this Court and the parties are in accord as to the facts encompassing the controversy in question. Therefore, the summary judgment apparatus is appropriately invoked in this case. See Wawa Dairy Farms v. Wickard, 149 F.2d 860 (3rd Cir. 1945).

■■ Review of this matter by the District Court is limited to proceedings inquiring whether substantial evidence supports the Secretary's findings and such review is in no way a trial de novo. See Federal Security Administrator v. Quaker Oats Co., 318 U.S. 218, 63 S.Ct. 589, 87 L.Ed. 724 (1943) and Queensboro Farm Products, Inc. v. Wickard, 137 F.2d 969, 980 (2nd Cir. 1943). Consequently it is incumbent upon this Court to consider arguments of counsel in relation to the opinion of the Judicial Officer as such may be supported in the record of the proceedings before the Administrative Body.

The order involved in this case (now known as No. 2, 7 C.F.R.Pt.1002.1 et seq., formerly designated No. 27, see 26 F.R. 12752) classifies milk into three fundamental groups known as Class I, II and III. The Market Administrator determines the price for each class. The Administrator then computes the total value of all milk used in each classification and determines the uniform blend

price which is required to be paid to the producers regardless of the specific utilization of their milk by the handlers. (The exact machinations of the computation process are not relevant to the subject matter of the instant action). A producer-settlement fund is provided pursuant to 7 U.S.C.A. § 608c(5) (B) (ii) and (C). Payments are made into this fund by the handlers whose total class utilization value of the milk exceeds the value of the milk at the uniform blend price and payments out of the fund are paid to those handlers whose total class utilization value of the milk is less than the value of the milk at the uniform blend price. Although the producer receives the uniform blend price regardless of the utilization of his milk, the handler must account and pay to all other handlers through this fund for the actual use value of the milk purchased by him. The intricacies of the pooling procedure are explained in United States v. Rock Royal Coop. Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939) which held the Act and process thereunder to be constitutional.

The plaintiff is a corporation of the State of New York and is admittedly a handler subject to the regulation order No. 27. It is a wholly owned subsidiary of Farm Lands, Inc., which is located in Fair Lawn, New Jersey. Windham operated a pool plant in Windham, New York and shipped raw milk to the plant in Fair Lawn. After processing, the milk products were delivered to steamships docked in New York. Other deliveries were made to ships moored on the New Jersey side of the Hudson River but owned by the same company as the New York vessels. All purchases for the ships, regardless of their port, were made through the shipping company office at Hoboken, N. J. The milk in question was to be used for commissary purposes aboard the ships while at sea. Said consumption was to be by the passengers in the ordinary course of dining while on board ship. The purchaser in question was the American Export Lines, Inc. The largest ships of these lines sail from New York while twenty smaller combined freight and passenger vessels sail from Hoboken, N. J. The milk purchased was all identically packaged and all of identical quality. None of the milk was utilized until the ships were out of sight of Port.

In auditing the milk utilization reports, the Market Administrator determined that the classification of the fluid cream transported to the Hoboken piers would be Class III while the classification of the fluid cream (of identical quality and character) delivered in New York would be Class II, since under the aforestated provision milk delivered to a plant or purchaser outside the New York-Metropolitan District was to be placed in a different and lower price classification. The plaintiff reported all of the milk delivered at the lower classification, but the Market Administrator reclassified some of the milk to the higher Class II category based on the fact that said milk was delivered to a purchaser within the New York metropolitan district (the ships docked in New York) thus requiring the plaintiff to pay an additional amount into the pool which has since totaled approximately $36,000.00 on all such shipments under the foregoing order.

The plaintiff contends that the order differentiating between Class II and Class III milk is illegal inasmuch as it exceeds the power of the Secretary under the statute and is therefore arbitrary and unenforceable. Plaintiff further contends that the milk in question was in the stream of foreign commerce and hence not subject to the power of the Secretary.

The defendant vigorously disputes both of these contentions and argues that the record below amply justifies both the promulgation of the order and the application to the plaintiff of said order in this situation.

The pertinent portions of Order No. 27 involved in this case are as follows:

"§ 927.33 *Plant at which classification is to be determined.* Clas-

sification shall be determined at the plant at which milk is received from dairy farmers: *Provided*, That if such milk is shipped in the form of milk or cream to another plant or other plants, it shall be classified, subject to the provisions of paragraphs (a) and (b) of this section, at the plant or plants to which it is shipped, and there shall be no limit on the number of interplant movements in the form of milk or cream except as set forth in paragraphs (a) and (b) of this section.

\* \* \* \* \* \*

"§ 927.37 *Classes of utilization.* Subject to all of the conditions set forth in Secs. 927.30 through 927.36 milk shall be classified at the plant at which classification is to be determined as follows:

\* \* \* \* \* \*

"(c) Class II milk shall be all milk the butterfat from which leaves or is on hand at the plant in the form of cream, sweet or sour, half and half, fluid cream products, or in the form of cultured or flavored milk drinks, containing less than 3.0 percent or more than 5.0 percent of butterfat, unless such cream, half and half, fluid cream products, or cultured or flavored milk drinks are established to have been so handled or marketed as to classify such milk in some other class named in this section.

"(d) Class III milk shall be all milk which meets the conditions set forth in any one of the following subparagraphs:

"(1) All milk the butterfat from which leaves or is on hand at the plant in the form of cultured or flavored milk drinks containing less than 3.0 percent or more than 5.0 percent of butterfat or in the form of cream, half and half, or fluid cream products, which cream, half and half, fluid cream products, or cultured or flavored milk drinks is delivered to a plant or a purchaser outside the New York metropolitan district and remains outside the New York metropolitan district.

"§ 927.4 *Marketing area.* 'New York-New Jersey Milk Marketing area' (hereinafter called the 'marketing area') means all of the territory within the boundaries of the City of New York, and the counties and parts of counties set forth in paragraphs (a) and (b) of this section together with all piers, docks and wharves connected therewith, and all craft moored thereat, and including territory within such boundaries which is occupied by Government (Municipal, State, Federal or International) reservations, installations, institutions or other establishments.

"(a) The city of New York and counties of Nassau, Suffolk (except Fisher's Island), and Westchester in the State of New York (such territory being referred to hereinafter as the 'New York metropolitan district')."

As indicated above, both sections of the order specifically apply to fluid cream in the New York-New Jersey Milk Marketing Area. § 927.37(c) is modified by subsection (d) when the product is delivered and remains outside the New York metropolitan district. Subsection (d) creates the Class III milk which is the lowest priced of the three categories and creates the situation whereof the plaintiff complains inasmuch as he is charged back from the pool more money for milk delivered to an identical purchaser on opposite sides of the Hudson River. The entire marketing area is made up of New York City, thirty counties in New York State contiguous thereto, and thirteen northern counties of New Jersey. The New York metropolitan district consists of New York City, Nassau, Suffolk and Westchester Counties.

Plaintiff contends that the Market Administrator erred in classifying the milk delivered in New York City to the ships moored there as Class II milk. Therefore the plaintiff has the burden

of proving that the Market Administrator's reclassification was erroneous or that the order itself is not in accordance with law.

■■ The order promulgated by the Secretary after proper hearing and procedure has the force and effect of law. Dairymen's League Co-operative Ass'n Inc. v. Brannan, 173 F.2d 57, 65 (2nd Cir. 1949). The milk was received for processing at the plant in Fair Lawn, New Jersey and the products delivered to the purchaser in the New York metropolitan district (for the ships located in New York). This is clearly under the ambit of Class II and falls under the exclusion of Class III since it was delivered to a plant or purchaser inside the New York metropolitan district and remains inside that district. The use of the milk as aforementioned was to be at sea. It is not the ultimate delivery to the destination of the purchaser's final use of the product which is important in the classification concept employed herein. Neither would devices such as a purported delivery in New Jersey and a later re-delivery to ships in New York suffice to bring the milk in question within the lower price category of Class III. See Dairyman's League, supra. The crux of the class determined under this particular order is based on the use of the last handler to whose plant the milk products move without regard to subsequent events which may be employed to create artificial applications. Cf. Titusville Dairy Products Co. v. Brannan, 176 F.2d 332 (3rd Cir. 1949).

■ The chief challenge by the plaintiff as evidenced through his brief and oral arguments appears to be that the basic concept of Order No. 27 exceeds the power delegated to the Secretary under the Act. Plaintiff relies on Queensboro Farm Products v. Wickard, 47 F. Supp. 206 (D.C.N.Y.1942), affd., 137 F.2d 969 (2nd Cir. 1943), for the principle that milk may be either classified in accordance with the form in which the milk is used or the purpose for which it is used. The plaintiff argues that it would be an unreasonable interpretation to make different rules apply to the same product and it is that very means which the Secretary is employing in the instant situation. The plaintiff reasons that the only difference relating to the milk products under consideration here was the place where delivered rather than a difference of form or purpose. Admittedly the form of the milk products in question were identical and all were sold to the same purchaser. The purpose of the purchase, use while at sea, was the same in both instances.

The defendant in support of the decision by the Judicial Officer states that the different classification is justified by a difference in economic values in the two areas in question, thereby justifying the price differential. It is the price fixing for economic purposes which the plaintiff challenges as not being sanctioned by the appropriate statute. The Judicial Officer in his opinion, and the record in question, demonstrate the basis for the promulgation of the order and the economic factors involved which dictate the necessity of such order in the expert opinion of the Secretary of Agriculture.

As previously stated, it is incumbent upon the plaintiff to bear the burden of proof in dispute of such action. The record does not indicate that the plaintiff has established such proof, neither do the cases cited by the plaintiff support his fundamental concept that the order exceeded statutory authority and is outside the statutory criteria empowering rule promulgation.

In 1957 the Marketing area under Order No. 27 was expanded to include Northern New Jersey. After study of the situation it was decided that while the order regulated the new and larger marketing area, producers should continue to benefit from the demonstrated higher value of certain products when disposed of in the locale which had originally constituted the entire marketing area. Therefore, the higher price of Class II was established so that the handlers involved in the marketing area enlargement would be returned to the

same competitive position as prior to the enlargement of the said area. This competitive use value would be determined on the basis of the price that could be readily obtained in the New York metropolitan district for such utilization. If the lower price could be obtained by purchasers seeking same in the New York metropolitan district, it would clearly undercut the competitive position of handlers located in that district and having to abide by the higher Class II price category. See 7 U.S.C.A. § 608c(18). The Judicial Officer found that these contentions were fully supported by the evidence and this Court is of the opinion that the record militates toward this conclusion.

The resultant economic loss upon the handler plaintiff in this case does not change this concept. See Secretary of Agriculture v. Central Roig Refining Co., 338 U.S. 604, 617, 70 S.Ct. 403, 94 L.Ed. 381 (1950).

The empowering Act declares as its policy the establishment and maintenance of orderly marketing conditions for agricultural commodities and Interstate Commerce. 7 U.S.C.A. § 602(1). 7 U.S.C.A. § 608c(18) states that the Secretary shall fix such price as he finds will reflect economic conditions which affect market supply and demand for milk and its products in the marketing area. The enunciated policy of the Act appears aimed at the maintenance of orderly marketing conditions to stabilize statutory price levels. See Grant v. Benson, 97 U.S.App. D.C. 191, 229 F.2d 765 (1955), cert. denied, 350 U.S. 1015, 76 S.Ct. 658, 100 L.Ed. 875 (1956). A situation involving an analogous concept of area price differential may be found in Titusville Dairy Products Co. v. Brannan, supra, and Wawa Dairy Farms, supra. See also Shawangunk Cooperative Dairies v. Jones, 153 F.2d 700 (2nd Cir. 1946).

The Wawa case dealt with a situation where the Secretary had fixed a 31 mile line outside of which a receiving station allowance might be deducted and within which the allowance was not to be deducted. The Court in dealing with the problem recognized that the Secretary had the power to promulgate a demarkation point on a reasonable basis and to be supported by substantial evidence. While the problem involved in such an order is based on different factors than the case at Bar, there is the analogous idea of separate areas being subject to separate and distinct regulation.

This entire situation is a difficult one for the Court to decide. At first blush it would seem that the plaintiff is suffering from a discriminatory policy inasmuch as deliveries to a purchaser of the same product involved different costs. It would appear that the purchaser was penalized unfairly. However, careful analysis of the situation reveals that neither the plaintiff nor the purchaser is being subjected to the vagaries of inconsistent administrative action. The Secretary must consider the total picture and promulgate rules to cover areas of different competitive makeup, even though separated by the breadth of the Hudson River. However, once established through the proper administrative process that competitive differences do exist, the rules thereafter promulgated must be uniformly applied to all handlers operating in the affected areas. There is no penalty being inflicted upon the plaintiff in this situation despite the added payments required. The plaintiff incurs such costs because his operation transgresses predetermined competitive area boundaries. To prevail plaintiff must show that the time tested promulgations by the Secretary in regard to the order and to classification by area are without basic foundation in principle and not in accord with the statutory criteria laid down by the empowering legislation. This burden has not been met.

The plaintiff's alternative argument may be categorized as stating that the milk in question was beyond the power of the Secretary to regulate inasmuch as it was involved in "foreign commerce." This contention may be disposed of summarily. The classification of the Secretary was based upon the

utilization of the milk prior to its shipment in foreign commerce. 7 U.S.C.A. § 608c(1) authorizes regulation of milk and milk products when such product "is in the current of interstate or foreign commerce, or which directly burdens, obstructs, or affects, interstate or foreign commerce * * *.". See 7 U.S.C.A. § 610(j). It must also be pointed out that the milk in question was to be consumed by the passengers of the vessel owned by the purchaser and can in no way be considered goods for export or for foreign trade.

The plaintiff further contends the milk delivered to the ship is "in transit" only and not subject to a classification by the Secretary. Plaintiff states that since the milk is not opened or used until the ship is on the high seas that it is not to be considered under the Class II category since it will find ultimate use outside the New York metropolitan district. As stated previously, it is not the ultimate use of the milk by the purchaser which controls the classification but rather the utilization of the milk by the handler which makes same subject to the regulation.

It is difficult to rationalize the argument of the plaintiff in regard to the categories under attack. The plaintiff desires that all milk be classified as Class III yet argues that Class II–III category is not promulgated in accordance with law. If the validity of such views would be accepted and the provision stricken, it would be difficult to see any benefit accruing to the plaintiff. At oral argument counsel declared that the Class III category should prevail and that the Class II provision be stricken alluding to the theory that the Secretary may make whatever change he deems just under the circumstances if the plaintiff's arguments are successful. However, the Court is not completely in accord with this reasoning. The Judicial Officer was of a similar opinion and cited Queensboro Farms Products, Inc., supra, 137 F.2d at pp. 979, 980 to support this contention that the exemption afforded by Class III would be void. This seems in accord with the common sense analysis of the problem.

In view of the foregoing and in light of the substantial record and the opinion of the Judicial Officer, it is the judgment of this Court that the defendant's motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied.

Let counsel for the defendant submit an appropriate order.