**ABBOTTS DAIRIES DIVISION OF FAIRMONT FOODS, INC.,**
Plaintiff,

v.

**Clifford M. HARDIN, Secretary of Agriculture of the United States Department of Agriculture, Defendant.**

**Civ. A. No. 71-549.**

United States District Court,
E. D. Pennsylvania.

Nov. 27, 1972.

5. Stull v. School Board, 459 F.2d 339 (3rd Cir. 1972) ; Axtell v. LaPenna, 323 F.Supp. 1077 (W.D.Pa.1971).

6. Stanley v. Illinois, *supra*.

Roland Morris, Philadelphia, Pa., for plaintiff.

John H. Sandor, Dept. of Agriculture, Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

In this case the question is whether the Secretary of Agriculture may issue a milk-pricing order in the absence of credible evidence to support his decision.

The controversy arises out of a ruling made by the Acting Secretary on August 20, 1969, 34 F.R. 13601, following a hearing on June 16 and 17, 1969. This decision abolished "bracketed pricing" of milk in the Delaware Valley.[1] Histori-

---

1. The decision also related to the Washington, D.C., and Upper Chesapeake Bay milk marketing areas. The prices that "handlers" (i. e., "dairies") pay to "producers" (i. e., "farmers") for milk are regulated in the Delaware Valley by Order No. 4. Thus, the Delaware Valley milk area is sometimes referred to as "Or-

cally, the prices paid by dairies to farmers for milk in this region were fixed under applicable federal law by the movement of certain economic indices. Under this system the milk price did not change unless the index crossed a fixed boundary. When it did so, the price per hundred pounds of milk would be adjusted by twenty cents. The new pricing system involves penny movements and is based upon the price paid for milk by dairies the previous month in the Wisconsin-Minnesota marketing area. As the price there moves up or down, the price in the Delaware Valley will be increased or decreased by the same amount.

Objection to the abandonment of the bracketing system having been raised, the hearing was reopened on October 30, 1969, and a further decision issued on behalf of the Secretary of Agriculture on January 20, 1970, 35 F.R. 1017, retaining the penny-price adjustment method. As a representative of its trade organization, Abbotts Dairies first exhausted its administrative remedies and then brought the present action for judicial review under applicable provisions of the Agricultural Adjustment Act, 7 U.S.C. § 608c(15)(B).

At the reopened hearing held on October 30, 1969, seven witnesses testified. Two appeared on behalf of the farm organizations which represent 75 percent of the relevant market. Two others, marketing experts, appeared on behalf of processors serving 70 percent of the relevant area. The fifth was a Professor of Agricultural Economics, involved in the study of milk marketing, from Penn State University. All of the testimony supported the bracketed pricing method and indicated that it would not cause price misalignment or market disruption. It was the opinion of these witnesses that bracketing would provide stability and avoid the consumer confusion that results from penny alterations in prices paid to farmers. A representative of a dairy in the Washington, D.C., area testified in favor of 40 cent brackets rather than 20 cent brackets. In addition, a representative of the Pennsylvania Milk Marketing Board, an agency of the Commonwealth, testified in favor of bracketing as a means of promoting stability and orderly market conditions. There were no witnesses who testified against the bracketing system or who gave evidence in favor of the penny for penny method of establishing milk prices. Thus, all of the evidence supported bracketing as the best method to achieve orderly marketing and insure adequate milk production in the Delaware Valley. Despite the unanimous opinions of all those who had testified at the hearing, the Secretary of Agriculture concluded that a bracketing system of prices should not be reinstituted.

As part of the administrative appeal procedure, a hearing was held on June 16, 1970, before a Department of Agriculture Examiner. The only testimony on bracketing came from one of the experts who had previously appeared on behalf of the milk processors. He said that the instability and disadvantages which he had predicted had come to reality with the abandonment of the bracketing system. The Hearing Examiner refused the petition to reinstate bracketing by a decision dated December 31, 1970. He concluded that to amend a marketing order requires a two-fold consideration: first, whether the hearing record supports the proposal and, second, whether the amendment would help to achieve the objectives established by Congress. He held that no amendment was required because the Secretary had

der No. 4." In Lehigh Valley Cooperative Farmers, Inc. v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed. 2d 345 (1962) the Supreme Court described the general scheme of milk price regulations. The Court in Zuber v. Allen, 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed. 2d 345 (1969) explains the economics of the milk industry and the statutory efforts to provide that all dairy farmers receive uniform prices for their products.

not determined that a return to bracketing would tend to effectuate the policies of the act.

The final step in the administrative appeal process was a decision by a judicial officer of the Department of Agriculture. He reached two conclusions. First, he pointed out that the Hearing Examiner had sustained an objection to the incorporation of the record of the hearings that preceded the decision of August 20, 1969, 34 F.R. 13601. Since this record was not in evidence, he said the decision on which it was based carried the presumption of regularity and that the petitioner had not met its burden of proving its invalidity. Secondly, he said that the action of the Secretary in refusing to reinstitute the bracketing system was well within the discretionary powers allowed by law. This decision was dated February 22, 1971, and Abbotts' petition to this court followed.

I. The Substantial Evidence Rule

The Administrative Procedure Act provides that reviewing courts shall hold unlawful and set aside agency action found to be unsupported by substantial evidence: 5 U.S.C.A. § 706.

The substantial evidence rule applies to milk-pricing under the Agricultural Adjustment Act: Fairmont Foods Company v. Hardin, 143 U.S.App.D.C. 40, 442 F.2d 762, 767 (1971). In *Fairmont*, the Secretary of Agriculture had established by geographic area certain differentials on the price of milk paid to farmers. The facts did not support his action, but the Secretary contended that nonetheless his decision should be sustained so that market disruption would be prevented. The court disagreed saying that while administrative and executive expertise encompasses powers of predictions not shared by those less familiar with the intricacies of the particular field, such powers, like those of any others, must be justified by reference to objective evidence. There must be a rational basis of record for invoking the concept of a preventative remedy. Since the decision of the Secretary did not meet that standard but contained only generalizations, it was set aside.

The instant case is not one which requires a nice balancing to determine whether the record contains "substantial" evidence to support an administrative decision. To the contrary, Abbotts contends there was no evidence at all to support the original order of August 20, 1969, which set aside bracketing and it was therefore illegal. The Secretary does not maintain there was any such evidence. Rather, he argues the action of an administrative agency is presumed to be valid and here the presumption cannot be overcome because the transcript of the hearing which preceded the order, that of June 16 and 17, 1969, was not made a part of the appeal record now before the court. In brief, the Secretary does not answer—he sidesteps.

Abbotts has always maintained the witnesses who appeared at the hearing on June 16 and 17, 1969, favored the bracketing system and that no testimony was produced then, or later, which would have justified its removal. Furthermore, Abbotts points out the original hearing was not even called to consider the matter.[2] Abbotts also asserts the only testimony which dealt with bracketing was that produced before the Hearing Examiner on October 30, 1969, or at the subsequent hearing on June 16, 1970.[3]

Abbotts made this position clear at the reopened hearing on October 30,

2. The hearings were convened in accordance with a notice dated May 28, 1969, 34 F.R. 8079, to consider minimum prices for Class 1 milk, to consider price differentials based on butterfat content, to tie the bracketing system for the Delaware Valley and other areas to prices in the Minnesota-Wisconsin area, and to increase the amount paid for administrative expenses. There is nothing in the notice to indicate that a removal of the bracketing system in the Delaware Valley was proposed or would be considered.

3. October 30, 1969, p. 14–15, p. 160; June 16, 1970, p. 11–16.

1969. On that occasion, general counsel for the Department of Agriculture asked the Hearing Examiner to take official notice of the decision issued August 20, 1969, 34 F.R. 13601.[4] Abbotts' attorney then asked if any factual determination referred to in the August 20 decision would be binding on the triers of fact on the record then being created. The Hearing Examiner replied official notice would be taken that a decision had been rendered and counsel for the Department of Agriculture said there was no other purpose in offering the decision.[5] In context, this could only mean the decision of August 20, 1969, and any testimony which preceded it were being divorced. The former was admitted; the latter was not even tendered. There was no statement thereafter to indicate any understanding or contention that the ultimate decision would be based on anything but the record which was being made at that time.[6]

The question again arose at the hearing of June 16, 1970. Counsel for Abbotts offered the record compiled on October 30, 1969, and pointed out his position that the order removing bracketing was invalid because it was not based upon a proper hearing record.[7] At one point counsel for the Department of Agriculture indicated there was no objection to confining the proceeding to the record made October 30, 1969.[8] Shortly thereafter, however, he asked for "official recognition . . . of that record," referring to the testimony produced during the original hearing of June 16 and 17, 1969. Abbotts' counsel objected on the grounds that only the hearing of October 30, 1969, could form the basis of a decision, and was sustained by the Hearing Examiner ". . . with the warning that if any of the matters mentioned in that first

paragraph number three in the petition to the present proceeding [this paragraph averred there was no evidence to support the removal of bracketed prices], if there's *any* argument made based upon the *allegation* I shall very probably reconsider the ruling. At the present time the objection is sustained." [9] (Emphasis added)

The "allegation" to which the Hearing Examiner referred was Abbotts' contention there had been no evidence produced on June 16 and 17, 1969, which would justify the removal of bracketing. The "argument" based on this allegation concerns the validity or invalidity of the order dated August 20, 1969.

■ If the order of August 20, 1969, was invalid, it must be set aside and bracketing must be restored. On the other hand, if this order was valid, it was only valid because of the evidence produced at the hearing in June, 1969. If the order to remove bracketing was to be sustained, the evidence produced on that occasion should have been made a part of the appeal record. That is what the Hearing Examiner said he would "very probably" do—and that which he obviously should have done. It is fatuous to assert the Secretary's action in this case should be affirmed because of a presumption that at a hearing called for other purposes there was certain evidence when, in fact, no one suggests there was any such evidence at all. I conclude that the presumption of regularity which usually accompanies the decisions of an administrative agency is not applicable in this case. It is one thing to presume administrative agency action is valid. It is quite another thing to ignore a hearing record so that an administrative officer may enjoy the serenity, the nonchalance that attends a presumption of regularity.

---

4. October 30, 1969, p. 10.

5. Hearing of October 30, 1969, p. 10–12.

6. Opportunities for the Hearing Examiner and counsel to indicate to the contrary were abundant; Hearing of October 30, 1969, pp. 11, 12, 14, 15–16, 38, 90, and 160.

7. Hearing of June 16, 1970, p. 6–11.

8. June 16, 1970, p. 12.

9. June 16, 1970, p. 16.

There being no objective evidence to support its validity, the order of August 20, 1969, must be set aside.

## II. Milk Production, Inter-Regional Price Relationships, and the Agricultural Adjustment Act.

■ There is another reason why the decision of August 20, 1969, 34 F.R. 13601, cannot stand: its factual determinations and reasoning do not support its conclusion. This deficiency was not cured by the subsequent opinions of January 20, 1970, December 13, 1970, and February 22, 1971.

A marketing order of the type here in question is issued by the Secretary of Agriculture to effectuate certain policies of Congress set forth in the Agricultural Adjustment Act: [10]

1. To establish and maintain orderly marketing conditions so that parity prices will be paid to farmers;

2. To protect the interest of the consumer so far as prices are concerned;

3. To establish and maintain minimum standards of quality and maturity, grading and inspection, so there will be orderly marketing of agricultural commodities in the public interest;

4. In the interests of producers and consumers, to establish and maintain an orderly flow of agricultural commodities to the market and avoid unreasonable fluctuations in supplies and prices; and

5. To continue such regulations that will tend to avoid a disruption of the orderly marketing of any commodity and be in the public interest.

■ The Act states that the Secretary of Agriculture shall issue a marketing order if he finds, and sets forth in it, upon the evidence produced at a hearing that the issuance of such an order and all of the terms and conditions thereof, will tend to effectuate the declared Congressional policies. Amendment proceedings are also governed by the hearing of evidence.[11] Upon an appeal of this type, it is the function of the court to determine whether or not the Secretary's decision is in accordance with law.[12] This limited inquiry is concerned with whether there is substantial evidence to support the Secretary's findings. In no way does it constitute a trial de novo on the issues: Windham Creamery, Inc. v. Freeman, 230 F.Supp. 632 (D.C.N.J.1964), aff'd 350 F.2d 978 (3rd Cir. 1965), cert. denied 382 U.S. 979, 86 S.Ct. 551, 15 L.Ed.2d 470 (1966).

As a basis for his decision of August 20, 1969, the Secretary found that milk production in the United States was down and that there was a need to maintain inter-regional price relationships. More specifically, his decision gave these reasons for the removal of bracketing:

1. Milk production in the United States has been declining since 1965.

2. Milk production has been declining in the 12 Northeastern states, from Maine through Virginia, during this same period. The Northeast is an important market area; more than 32 percent of all milk marketed under Federal orders comes from this region as do almost 34 percent of all producers whose milk is priced under Federal regulation.

3. Other than in the Northeast, milk prices in the United States move up or down as those in the Minnesota-Wisconsin area vary. In the Northeast, however, milk prices are established by reference to certain economic formulas.

4. For the years 1966, 1967, and 1968, the Department of Agriculture took a number of price actions to stimulate milk production.

5. Farmers in the Northeastern states have not received the most recent price increase which other farmers have obtained.

6. This increased price has caused a further deterioration of the previously

---

10. 7 U.S.C.A. § 602.

11. 7 U.S.C. §§ 601, 602, 608c(3), (4), and (17).

12. 7 U.S.C. § 608c(15) (B).

established inter-regional price relationship with markets outside the Northeast.

7. Whether further price increases may occur during the marketing year in the Minnesota-Wisconsin area cannot be forecast.

8. If the general level of milk production is to be maintained, dairy farmers in the Northeast must continue to have assurance that their prices will be increased to the same extent as other dairy farmers.

9. Therefore, the price paid for milk to farmers in the Northeast should increase each month by the amount which is paid in the Minnesota-Wisconsin area. It is intended that producers in all markets receive similar treatment and pegging prices to the Minnesota-Wisconsin area is the best designed method to achieve this objective.

10. There is no method of bracketing which would provide the same increase each month in the Northeast that will be ordered in other market areas.

Initially, it must be noted that the Secretary does not indicate the bracketing system is related at all to the lowered rate of milk production. To the contrary, he pointed out that it was "attributable to factors such as high prices for cull cattle, better returns from alternative farm enterprises, more attractive off farm opportunities for labor, increased costs of farm labor and equipment, and increased taxes and interest rates." [13]

Even more striking, there is no indication in this decision that a downward trend in milk production during the years from 1965 through 1969 was not completely desirable. For all that is said, 1965 may well have been a year of severe overproduction. Recently, medical experts have warned that too much milk, ice cream, butter, and cheese may have an adverse effect on the health of an adult. Many milk substitutes, from margarine to "non-dairy creamers" for

coffee, may be receiving greater customer acceptance. These factors and others may indicate that a lowered production rate is both expected and desirable. The Secretary made no finding that on either a national basis or in the Northeast was the decline in milk production causing hardship to the consumer or any segment of the dairy industry. There was simply nothing to indicate why a lowered rate of milk production was inconsistent with the policies of Congress as set forth in the Agricultural Adjustment Act.

The Secretary is just as mysterious with regard to his statement concerning the need to maintain inter-regional price relationships. Apparently these relationships have been satisfactory for many years during which the Northeast was on a bracketing price system. That being the case, there is no indication as to why a bracketing system in the Northeast, and specifically in the Delaware Valley, would now destroy satisfactory price alignments. For example, there is no analysis of how the bracketing system which provides for fewer, but greater monetary increases or decreases, is incompatible with a system where the changes take place on a monthly, but smaller cash basis. The Secretary does not contend that there is any relationship between inter-regional price differences and the decline in milk production. He observes that recent price increases outside of the Northeast have caused a deterioration of the previously established inter-regional price relationships existing between the Northeast and other markets. He points out that if production is to be maintained in the Northeast, the farmers in that area must be assured that their prices will be increased to the same extent as those relating to other milk marketing areas. However, he also notes that while the bracketing system was still in effect, the decline in milk production in the Northeast slowed down as

13. Decision of August 20, 1969, 34 F.R. 13602.

contrasted with the decline in milk production nationwide, citing these figures:

| Milk Production | 1967 | 1968 | 1969(½) |
|---|---|---|---|
| Nationwide | −1% | −1.3% | −1.9% |
| Northeast Mkts. | −1.4% | −2.2% | − .5% |

A reading, and rereading of this decision leads one to the inevitable conclusion that the Secretary of Agriculture has rested the entire matter upon the assumption, perhaps valid and perhaps fallacious, that milk production should be maintained at the 1965 level. Flying in the face of his only statistics, he determines that there will be a greater decrease of milk production in the Northeast under a bracketed system of computing prices than under a penny for penny method. He does not say why.

### III. Conclusion

In summary, this is a case where there was no evidence on the point in question. Since there was no evidence, there were no findings germane to the issue. The absence of findings made logical reasoning impossible and the final conclusion invalid. It follows that the decision of August 20, 1969, which set aside bracketing must be reversed.