**CARNATION COMPANY et al.,**
**Plaintiffs,**

v.

**Earl L. BUTZ, Defendant.**

**Civ. A. No. 6–73.**

United States District Court,
District of Columbia.

March 21, 1974.

Robert N. Sayler, Washington, D. C., for plaintiffs.

Robert M. Werdig, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

This action challenges the legality of the Secretary of Agriculture's suspension of scheduled declines in milk support prices without benefit of notice or hearing. The case is now before the Court on cross-motions for summary judgment.

The action arises under the Agricultural Marketing Agreement Act of 1937 [1] and in particular, under § 8c(18) of the Act [2] which authorizes the Secretary of Agriculture to "fix minimum prices" to be paid by milk handlers (processors) to milk producers or associations of producers.

The record reflects that on March 1, 1966, scheduled reductions in Class I milk prices for eleven Federal Milk Marketing Orders took effect to reflect expected seasonal increases in milk supply. The Secretary of Agriculture also on that date issued a suspension notice effective March 2 which suspended these seasonal price adjustments.[3] The suspension remained in effect through April 9, 1966. The effect of the Secretary's March 1 action was to return Class I prices in each order to the higher pre-March 1 levels thereby causing plaintiff milk processors to pay more for milk than they would have, had the price decline provisions been allowed to operate. Plaintiffs challenge this action on the ground it was made without benefit of notice or hearing as required by certain provisions of the Act.

In review proceedings below, the Chief Hearing Examiner for the Department of Agriculture ruled that § 8c(18) of the Act required the Secretary to afford plaintiffs notice and opportunity for hearing before suspending the seasonal price declines in the affected orders.[4] This ruling was subsequently reversed by the Department's Judicial Officer who found the Secretary's action justified under § 8c(16) of the Act which authorizes the Secretary to suspend a pricing provision without notice and hearing whenever it tends to no longer effectuate the policy of the Act.[5]

The fact that notice and hearing did not precede the March 1 suspension action is not in dispute. The only issue for this Court's determination is whether the suspension action was legal under the powers granted the Secretary by § 8c(16). For reasons set forth below, the Court finds that the Secretary's March 1 action cancelling scheduled price declines was not authorized by the statutory grant of § 8c(16) but instead constituted an illegal amendment under § 8c(18).

The record indicates that the March 1 action did not actually withdraw from operation entire Class I orders but rather eliminated from them words and

---

1. 7 U.S.C. § 601 et seq.

2. 7 U.S.C. § 608c(18).

3. 31 Fed.Reg. 3383–85 (March 4, 1966).

4. Section 8c(18) provides:

   The Secretary of Agriculture, prior to prescribing any term in any marketing agreement or order, or amendment thereto, relating to milk or its products, . . . shall ascertain the parity prices of such commodities. . . . Whenever the Secretary finds, upon the basis of the evidence adduced at the hearing required by section 608b of this title or this section, . . . that the parity prices of such commodities are not reasonable in view of the price . . . he shall fix such prices as he finds will reflect such factors. . . . Thereafter, as the Secretary finds necessary on account of changed circumstances, he shall, after due notice and opportunity for hearing, make adjustments in such prices.

5. Section 8c(16) (A) provides:

   The Secretary of Agriculture shall, whenever he finds that any order issued under this section, or any provision thereof, obstructs or does not tend to effectuate the declared policy of this chapter, terminate or suspend the operation of such order or such provision thereof.

phrases which referred to scheduled price reductions.[6]

Plaintiffs have characterized this transformation as an amendment because it established new prices for future periods which differed from those set forth in existing milk orders. Defendant argues that instead of adjusting prices by way of amendment, his action was a suspension of a scheduled price adjustment and thus sanctioned under § 8c(16). In essence, defendant urges a differentiation between a suspension of a price "adjustment", controlled by § 8c(16), and an "adjustment" by way of an amendment, governed by § 8c(18).

I

The language of § 8c(18) requires the Secretary to give notice and opportunity for hearing prior to making amendments or adjustments to price orders.[7] The word "amendment" has been variously defined as a modification, alteration or reformation[8] while "adjustment" has been accorded the meaning of a correction or modification.[9]

It is clear from even the most cursory review of the Secretary's suspension action, that by purportedly suspending scheduled price reductions, he altered the basic content of each Class I order by substituting one future price for another. To call this act a suspension within the scope of § 8c(16) not only requires sacrificing substance to form but also necessitates ignoring the overall amendatory effect of the action.[10]

■ In a purely technical sense, it can be said that the words relating to spring price declines were indeed suspended. But the inquiry should not be whether a particular operative provision of an order has been temporarily removed but whether that removal has the effect of producing a new order materially different from the old. The consequences of applying the former test would severely undermine the procedural safeguards required for amendatory actions by § 8c(18) and in fact make their availability superfluous.

Had the Secretary suspended the Class I order entirely and let free market conditions dictate price, his action would have been sanctioned by § 8c(16). There is nothing in the Act nor its legislative history to indicate that termination or suspension of regulatory controls requires notice and hearing. Instead, defendant adjusted the Class I orders by replacing scheduled spring prices with higher winter ones. The clear effect of this action was to adjust the Class I orders without benefit of notice and hearing.

■ It is a cardinal principle of statutory construction that an interpretation of a statutory provision which tends to emasculate its purpose and effect is not favored. Meaning and significance should be given to all the pro-

6. As an example of the effect caused on Class I orders by the Secretary's March 1 suspension, the St. Louis order, promulgated in November 1965, is illustrative. Prior to the March 1 action, the St. Louis order read:
"Provided, that the Class I price for December 1965 and January and February 1966 shall be $4.80 and for March through June 1966 shall be $4.60."
The suspension action deleted reference to the $4.60 March price in the following fashion:
"~~Provided, that~~ the Class I price ~~for December 1965 and January and February 1966~~ shall be $4.80 ~~and for March through June 1966 shall be $4.60.~~"

7. Statute cited in footnote 4.

8. Webster, Third New Int'l Dictionary (unabr. ed. 1967) at p. 68; Black, Law Dictionary (4th ed. 1951) at p. 106.

9. Webster, Third New Int'l Dictionary (unabr. ed. 1967) at p. 27.

10. *Note* Appendix B to the decision of the Judicial Officer containing Solicitor's Opinion Number 5182, issued to the Secretary October 17, 1945, in which the Solicitor concludes with regard to a similar suspension action that, "it is apparent, of course, that the proposed suspension · effectuates a change which is in effect tantamount to an amendment."

visions of a statute. United States v. Menasche, 348 U.S. 528, 538, 75 S.Ct. 513, 99 L.Ed. 615 (1954). Consequently, defendant's broad interpretation of § 8c(16) must fall in favor of preserving the statutory integrity of § 8c(18).

## II

Review of the legislative history of the 1937 Act reveals a concern on the part of Congress to avoid the procedural failings met by the National Industrial Recovery Act provisions [11] in Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). The 1937 Act was an outgrowth of the Agricultural Adjustment Act of 1933.[12] That Act contained only limited procedural protections and standards, and did not authorize the Secretary to fix the price for milk. Following the decisions in *Schechter*, and in Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), Congress amended the Act in 1935 [13] to include an outline of the terms and conditions to be included in Federal Milk Marketing orders as well as notice and hearing requirements for adopting and amending an order.[14] Also contained in the 1935 amendments was section 8c(16). The Act was again amended in 1937 at which time section 8c(18) was incorporated.

The legislative history of the Act sheds little light on the extent of the Secretary's authority under § 8c(16) and (18). No mention of § 8c(16) was made in the floor debates and the committee reports merely summarize the language of the sections.[15] Case law pertaining to the 1937 Act has been equally devoid of analysis regarding the scope of the Secretary's power to suspend without notice and hearing. Nevertheless, cases interpreting other provisions of the 1937 Act are instructive in measuring the general degree of author-ity accorded the Secretary under the Act.

In upholding the pricing provisions of the 1937 Act in United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939), the Supreme Court reviewed the procedural safeguards contained in the 1937 Act, including § 8c(18), and observed:

> "Even though procedural safeguards cannot validate an unconstitutional delegation, they do furnish protection against an arbitrary use of properly delegated authority." *Id.* at 576, 59 S.Ct. at 1014.

More recently, the Supreme Court in passing on the validity of farm location differentials under the 1937 Act, had occasion to note in Zuber v. Allen, 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969), that:

> "In an Act whose very purpose was to avoid the infirmity of overbroad delegation and to set forth with particularity the details for a comprehensive regulatory scheme, . . . . (i)t is clear that Congress was not conferring untrammeled discretion on the Secretary and authorizing him to proceed in a vacuum." *Id.* at 185, 90 S.Ct. at 324.

In this circuit, the United States Court of Appeals, in reviewing certain location differential provisions under the 1937 Act, stated in Fairmont Foods Co. v. Hardin, 143 U.S.App.D.C. 40, 442 F.2d 762 (1971):

> " . . . it is important to keep in mind the limited scope of authority that Congress delegated to the Secretary in the field of milk marketing regulations. This is not a case where the power of an agency or officer is bounded only by the broad Congressional mandate that it be exercised in the 'public interest.' As emphasized

---

11. 48 Stat. 195 (1933).

12. 48 Stat. 31 (1933).

13. 49 Stat. 750 (1935).

14. *See* sections 8c(3) and (4) of the 1935 Act.

15. *See* S.Rep.No.1011, 74th Cong., 1st Sess. 15 (1935); H.R.Rep.No.1241, 74th Cong., 1st Sess. 14 (1935).

by recent court decisions, the text and legislative history of this statute make it plain that the Secretary was required to operate within the narrow confines of powers expressly granted." (Footnotes omitted.) *Id.* at 766.

While none of these cases focuses upon the scope of the Secretary's authority under § 8c(16), each makes clear that the Secretary's general authority to set prices must be carefully circumscribed by the precise procedural requirements of the statute in order to maintain constitutional integrity. The *de facto* amendatory power read into § 8c(16) by defendant is clearly in contravention of this construction as well as being an erroneous interpretation of legislative motives behind the 1935 amendments.[16]

### III

■■ The Judicial Officer found in his Final Decision that the "present suspension of provisions affecting class prices was preceded by 257 similar suspension actions, the earliest occurring in 1942 (see 7 F.R. 9385 and 7 F.R. 10905)."[17] On the basis of this finding and on the basis of Norwegian Nitrogen Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933), the Judicial Officer concluded that the Secretary's suspension action was within the accepted confines of § 8c(16) because "contemporaneous and longstanding construction of an Act by the agency charged with administering it is given substantial weight when construing the statute."[18]

To the extent this general principle of statutory construction has relevance to the 1937 Act, strong consideration must be given to the Supreme Court's analysis of the issue in *Zuber, supra.* In pertinent part, the Supreme Court noted:

"While this court has announced that it will accord great weight to a departmental construction of its own enabling legislation, especially a contemporaneous construction, . . . it is only one input in the interpretational equation. Its impact carries most weight when the administrators participated in drafting and directly made known their views to Congress in Committee hearings. . . .

The Court may not, however, abdicate its ultimate responsibility to construe the language employed by Congress." 396 U.S. at 192, 193, 90 S.Ct. at 327, 328.

The record below reveals no evidence indicating that the administrators issuing the earliest suspension orders also participated in the drafting of § 8c(16) or made their views on this section known to Congress. To the contrary, Departmental reports on the 1937 Act, contemporary with its enactment, reflect a clear emphasis on the procedural safeguards of § 8c(18) while offering no hint of the interpretation now urged by defendant.[19] In Solicitor's Opinion Number 5182 issued to the Secretary on October 17, 1945, and appended to the Judicial Officer's Final Decision, the Solicitor found suspension actions justified under § 8c(16) but nevertheless recognized that "the proposed suspension presents legal problems of a rather acute character."

No congressional hearings have been cited to show that Congress was ever directly confronted with the instant issues or was even made aware of the suspension powers now being claimed.

Taken as a whole, these facets to the early history of the 1937 Act reveal no contemporary agency construction which would support the suspension practice of later years. Bare agency construction, unconfirmed by the courts and unsupported by legislative history, cannot serve to support a statutory gloss that is otherwise impermissible.

16. *See* Brannan v. Stark, 342 U.S. 451, 465, 466, 72 S.Ct. 433, 96 L.Ed. 497 (1952).

17. Final Decision at 45.

18. *Id.* at 47.

19. *See* 1939 USDA Report on AMAA Procedures at pp. 48–50.

## IV

■ Defendant has emphasized that the suspension action was prompted by a "contra-seasonal" production pattern that abruptly developed in the latter part of 1965 and early 1966. The pattern tended to indicate a long term trend toward lower production which prompted the Secretary to issue his March 1 notice thus insuring high prices during a period of unexpectedly low production.

Whatever the need for urgent action might have been, it was an insufficient reason for abandoning the requirements of notice and hearing in view of § 8c(17) [20] which provides in part:

"... notice of a hearing upon a proposed amendment to any order issued pursuant to this section, given not less than three days prior to the date fixed for such hearing, shall be deemed due notice thereof."

Plaintiffs have cited uncontroverted authority for the proposition that production response to changes in the producer price is slow and uncertain.[21] This being the case, and in view of the fact that shifts in production patterns apparently occurred over a period of several months, there is no reason why the three day notice provision of § 8c(17) could not have been utilized to convene an early hearing in an effort to reach an expeditious resolution of the problem.

■ Accordingly, plaintiffs' motion for summary judgment is granted and the case is remanded to the Secretary for a determination of appropriate refunds due plaintiffs on account of his March 1 to April 9 suspension action which has been herein found illegal. Plaintiffs request for a permanent mandatory injunction against future adjustments of federal milk marketing price orders by suspension action without complying with the requirements of §

8c(18) will be denied since the relief goes to future administrative actions of a speculative nature not now before the court.

---

20. 7 U.S.C. § 608c(17).

21. *See* Rojko, The Demand and Price Structure for Dairy Products, USDA Tech.Bull. 1168, at p. 1 (1957).