ABBOTTS DAIRIES DIVISION OF
FAIRMONT FOODS,
INC., Plaintiff,

v.

Earl L. BUTZ, Secretary of Agriculture.

Civ. A. No. 71–549.

United States District Court,
E. D. Pennsylvania.

Oct. 4, 1976.

Roland Morris, Philadelphia, Pa., for Abbotts.

Donald F. Copeland, Philadelphia, Pa., for intervenor.

John H. Sandor, Dept. of Agriculture, Washington, D.C., for defendant.

OPINION

DITTER, District Judge.

This case involving judicial review of a milk-pricing decision of the Secretary of Agriculture is before the court for the third time. Presently under consideration are the motion of various dairy cooperatives to intervene, the motion of the Secretary for reconsideration of my decision[1] granting summary judgment, and the question of an appropriate order regarding prospective relief.[2] After briefly outlining the factual and procedural history of this case, I will address these issues seriatim.

I. *Factual Background*

Prior to June, 1969, the prices paid by handlers (dairies) to producers (farmers) for milk in the Delaware Valley Marketing Area, which is sometimes referred to as "Order No. 4",[3] were tied to certain economic indices. Under this system, known as bracketed pricing, the price of milk did not change unless the indices crossed a fixed boundary. When they did, the price per hundred pounds of milk would be adjusted in brackets of twenty cents.

In June, 1969, the Secretary held a hearing to consider, inter alia, milk pricing in the Northeastern United States, including Order No. 4. Before the Secretary were two proposals. One, by various New York and New England dairies, was to peg the price of milk in the whole Northeast to the Chicago price and then move it on a penny-by-penny basis with any change in the Chicago index. The other, proposed by a Delaware Valley cooperative, recommended that a bracketed pricing system, pegged to the Minnesota-Wisconsin price, should be adopted solely for Order No. 4. On August 20, 1969, the Secretary of Agriculture issued a new pricing order for the Delaware Valley that provided for penny-by-penny price movements based upon changes of price in the Minnesota-Wisconsin area. 34 Fed.Reg. 13601. Objection to the abandonment of bracketed pricing having been raised, the hearing was reopened on October 30, 1969, and thereafter, on January 20, 1970, the Secretary issued a further decision, again retaining the penny-by-penny pricing method. 35 Fed.Reg. 1017. After unsuccessfully exhausting its administrative remedies, Abbotts instituted the present suit for judicial review pursuant to Section 8c(15)(B) of the Agricultural Marketing Agreement Act, 7 U.S.C. § 608c(15)(B).

1. *Abbotts Dairies Division of Fairmont Foods, Inc. v. Butz*, 389 F.Supp. 1 (E.D.Pa.1975).

2. Also outstanding in this case is the issue of what damages, if any, plaintiff, a milk handler, may recover in respect of the Secretary's illegal order. Although the court has received briefs and heard argument on this exceedingly complex issue, I have deferred my decision on it because certain questions have not been adequately addressed by the parties. By letter of this date, I have directed them to submit further briefs dealing specifically with these questions.

3. At the time of the hearing referred to in the text the prices that handlers paid to producers for milk were regulated in the Delaware Valley by Order No. 4. Hence, the Delaware Valley milk area was sometimes referred to as "Order No. 4." On August 1, 1970, the Delaware Valley Marketing Area was merged with the Washington, D.C. and Chesapeake Bay Marketing areas to form the Middle Atlantic Marketing Area, the present area covered by Order No. 4. 35 Fed.Reg. 9925, 10,273.

In an opinion issued on November 27, 1972,[4] I concluded that there was no showing in the record there before me that the Secretary's order of August 20, 1969, was supported by substantial evidence, a deficiency which was not cured by subsequent administrative decisions. At the Secretary's suggestion, the matter was remanded so that his Judicial Officer could review all of the record to see if it could be shown that the Secretary's decision was supportable by substantial evidence. In a loquacious opinion that went far beyond the remand order, the Judicial Officer not only held that the Secretary's decision was supported by substantial evidence, but also held that substantial evidence was not required as a basis for the Secretary's action, that the Secretary's decision was not reviewable by this court, and that the case had become moot because of subsequent changes in federal milk marketing orders.

After the issues were once again briefed by the parties, I issued an opinion on January 9, 1975,[5] in which I granted summary judgment in favor of Abbotts Dairies. Because all of the evidence at the hearing which preceded the August, 1969, decision, and on which it was required by statute to be based, supported bracketed pricing in the Delaware Valley, I held that the Secretary's decision to adopt penny-by-penny pricing was not based upon substantial evidence and must be set aside.[6]

## II. *Motion to Intervene*

The movants for intervention,[7] Pennmarva Dairymen's Cooperative Federation, Inc., Lehigh Valley Cooperative Farmers and Capital Milk Producers Cooperative, Inc., represent approximately 5200 farmers that supply about 75 percent of the milk in the area encompassed by the present Order No. 4. Their stated reasons for wishing to intervene are to seek clarification of the court's decision of January 9, 1975, as to what pricing structure is operative in Order No. 4 at this time and to join in the Secretary's motion for reconsideration of that decision. They claim that they have a direct financial interest in preserving a stable and orderly market structure in Order No. 4 and that through the producer settlement fund they would ultimately be liable for any damages the court may award in this case.

■ Intervention, whether claimed as a right or as permissive,[8] must first of all be timely. Timeliness is not dependent upon the chronological progression of the action; rather, it must be determined from all the circumstances by a court exercising its sound discretion. *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973).

The Judicial Officer issued a final opinion refusing to reinstate bracketed pricing on February 22, 1971. Shortly thereafter the present action was filed in this court. For four and one-half years this case had been litigated by plaintiff and defendant. Suddenly, and only *after* the elimination of bracketed pricing had been held unlawful, movants decided that they should become active parties to these proceedings. The only substantive reason given by movants for their inordinate delay was that they were surprised by Abbotts' claim for damages and other relief. Specifically, they contended that they were led to believe Abbotts only sought recovery of overpayments to the producer settlement fund[9]

---

4. This decision is reported at 351 F.Supp. 561 (E.D.Pa.1972).

5. *Abbotts Dairies*, supra, 389 F.Supp. 1.

6. I also held that the Secretary's decision was subject to judicial review, that the appropriate review standard was the substantial evidence test, and that the case had not become moot.

7. On May 22, 1975, and June 13, 1975, I denied the motions to intervene without opinion, pre-

ferring to consolidate the opinion on that question with this decision on the merits.

8. Movants claim both intervention as of right under Rule 24(a)(2) and permissive intervention under Rule 24(b)(2).

9. For a summary explanation of the operation of the producer settlement fund see my prior decision in this case, 389 F.Supp. at 12 n. 16.

and that after the court's favorable January 9, 1975, ruling, Abbotts changed its position to claim restitution of the differences between the invalid price imposed by the government and the price that would have been paid under a bracketed system. This argument is hardly persuasive.

█ It is clear from the entire record in this matter that Abbotts' position has always been that it is entitled to restitution *from* the producer settlement fund for overpayments made both *to* the fund and to producers themselves. The exhibits attached to Abbotts' memorandum in opposition to intervention show that some producers, and particularly those in the Interstate Milk Producers Cooperative, a member of Pennmarva, were on actual notice that Abbotts proposed to, and in fact, did withhold money *from producers* and from the producer settlement fund until enjoined from doing so by Judge Luongo in *United States v. Abbotts Diaries,* 315 F.Supp. 571 (E.D.Pa. 1970). Judge Luongo's opinion noted that Abbotts asked that "it be permitted to make the payments into court rather than *to producers* and to the producer-settlement fund." *Id.* at 573 (emphasis added). Although he denied this request, Judge Luongo went on to note that:

Abbotts will be adequately protected if the attack on the Order is ultimately upheld. There appears to be adequate provision within the workings of the producer-settlement fund for repayments or credits for such amounts as may be determined to have been overpaid to the fund.

*Id.* at 574. It is difficult to believe that movants were not adequately warned of the economic consequences of an adverse decision against the Government. Therefore, I conclude that the movant's motion to intervene was not timely made. See *Hoots v. Commonwealth of Pennsylvania,* 495 F.2d 1095 (3d Cir. 1974); *Mack v. General Electric Co.,* 63 F.R.D. 368 (E.D.Pa.1974).[10]

Although for the reason stated above I refuse to allow the movants to intervene generally, because the damage issue presents exceedingly complex questions on which I have deferred decision pending receipt of further briefs from those already parties, I will allow movants to intervene for the limited purpose of presenting their views on this issue.[11]

### III. *Motion for Reconsideration*

█ The government advances numerous arguments in support of its Fed.R.Civ.Proc. 60(b)(1) and (b)(3) motion for reconsideration of my January 9, 1975, decision granting summary judgment in favor of Abbotts. First, it contends as did the movants for intervention, that Abbotts has misrepresented its position with respect to the claim for damages and that this requires reconsideration of the merits of the entire case. I reject this argument for essentially the same reasons discussed earlier in connection with the motion to intervene: an examination of the record simply fails to show any plausible basis for a claim of surprise. Elmer C. Flounders, Vice President of Abbotts, expressly informed the Market Administrator of Order 4 in February, 1970, of its position that it was entitled to pay farmers only the bracketed price it claimed the Secretary should have adopted. As noted previously, this was in fact the price Abbotts paid farmers until enjoined from doing so by Judge Luongo in a decision which

---

10. Movants also argue that they are not adequately represented by defendant. Contrariwise, the government has tenaciously opposed the plaintiff at every point in these proceedings. All along it has demonstrated a high level of legal competency. As the government points out, if Abbotts' position is upheld the government may have to make significant changes in the milk pricing procedures. This could affect the whole nation. Moreover, when asked by the court whether he would make any additional or different arguments beyond those made by the government, movants' counsel said he would not.

11. The authority of the district courts to limit intervention to certain issues is firmly established. See *Van Hoomissen v. Xerox Corp.,* 497 F.2d 180, 181–82 (9th Cir. 1974); *Ionian Shipping Co. v. British Law Ins. Co.,* 426 F.2d 186, 191–92 (2d Cir. 1970); *Smuck v. Hobson,* 132 U.S.App.D.C. 372, 408 F.2d 175, 180–82 (1969) (en banc); cf. *Hoots v. Commonwealth of Pennsylvania,* supra.

specifically stated that Abbotts would be adequately protected from overpayments *to producers* if it ultimately won on the merits. *United States v. Abbotts Diaries,* supra, 315 F.Supp. at 574.[12] Thus, it seems clear to me that the government had ample notice of the type and extent of damages claimed by Abbotts.

The principal argument for reconsideration put forth by the government is that I erred when I concluded that bracketed pricing had been illegally terminated in Order No. 4. The Secretary's position is that bracketed pricing had been *lawfully* terminated prior to the June 1969 hearings and that those hearings were conducted for the purpose, *inter alia*, of considering whether bracketing should be reinstituted. Proceeding from this position the Secretary argues, in effect, that since only the adoption of bracketed pricing, not its rejection, would have changed the then-existing status quo, his refusal to adopt it was not the "issuance of an order or amendment to an order" within the meaning of Sections 8c(4) and (17) of the Act, 7 U.S.C. § 608c(4) and (17), and therefore need not have been supported by substantial evidence. While I agree with the Secretary's interpretation of the statute,[13] I do not agree that bracketing

had been terminated prior to the June, 1969, hearing. During the period prior to the hearing the milk-pricing policy in Order No. 4 retained the seminal characteristics of bracketing—all price movements were pegged in large bracket type integers rather than on a penny-by-penny basis.

Several times between 1966 and 1969 the Secretary took specific notice of the peculiarities in the bracketed pricing policy of Order No. 4 when setting a new price. In fact, on May 1, 1967, a new bracketed formula was expressly adopted for this area. The Secretary argues that the two pricing orders promulgated in 1968, adopted after the requisite hearings, set a specific price for milk, thus essentially eliminating bracketing and leaving only obsolete bracketing language. Of course, this contention overlooks the fact that while these orders "inactivated" the formulas, the price increases they mandated were made in the same large, bracketed integers that had previously been used in this emergency period.

In December, 1968, the Secretary terminated the language that made the September 15, 1968, order temporary, thereby making the order permanent. As I noted in my earlier opinion, however, the Secretary may not temporarily suspend a pricing formula

---

12. The government's other contention in this regard—that my January 9, 1975, opinion limited Abbotts' recovery to overpayments to the producer settlement fund—is likewise without merit. The only statement I made with respect to damages was in discussing the mootness issue. In holding the case was not moot, what I said was, "Plaintiff contends it is entitled to damages for overpayments resulting from the Secretary's illegal decision." 389 F.Supp. at 12.

13. Section 8c(4) of the Act provides:

After such notice and opportunity for hearing, the Secretary shall issue an order if he finds, and sets forth in such order, upon the evidence introduced at such hearing . . . that the issuance of such order and all of the terms and conditions thereof will tend to effectuate the declared policy of this chapter with respect to such commodity.

Section 8c(17) incorporates the above provision as a requirement for amendments to orders. I agree with the government that the statute means only that the Secretary cannot take the affirmative action of issuing any order or

amendment, unless it is supported by substantial record evidence. It does not mean that merely because a proposed order provision has unopposed supporting evidence in the record, the Secretary must adopt it. The Secretary's decision not to adopt a proposed order, that is not to change the existing status quo, is committed to his discretion; it is only when the Secretary seeks to change the status quo that judicial review under the substantial evidence test comes into play. In view of the fact that in promulgating milk marketing orders the Secretary normally functions in a rule-making capacity, a construction of the statute so as to require substantial evidence to support the Secretary's refusal to issue an order would play havoc with the administrative process. As the government points out, such a construction of the statute would mean that every time a proposal were offered, no matter how farfetched or unreasonable, either the Secretary or others who opposed it would be required to present substantial evidence against it at the hearing or risk having the Secretary's refusal to adopt it set aside by a reviewing court.

to cope with an emergency situation, and then unilaterally terminate that portion of the suspension order which makes it temporary, thereby creating, without a hearing, a permanent order which drastically changes the milk pricing policy of a market area. 389 F.Supp. at 5; see also *Carnation Company v. Butz*, 372 F.Supp. 883, 886 (D.D.C.) appeal dismissed, C.A. 74–1807 (D.C.Cir. filed Dec. 17, 1974).

Whether I am correct in concluding that bracketed pricing had been illegally eliminated does not affect the validity of my earlier ruling. That decision was not based wholly on the assumption that bracketed pricing was still in force in the summer of 1969. Rather, it was based alternatively upon the fact that the Secretary's decision to change the status quo in Order No. 4 by adopting the penny-by-penny pricing formula proposed by the New York and New England interests was not supported by substantial evidence. Thus, whether bracketed pricing was or was not in effect has no import except as to the method and motive behind the Secretary's August, 1969, decision.

Recognizing that this was an alternative holding of my earlier decision, the government also argues that the August, 1969, pricing order was supported by substantial evidence. I have already exhaustively discussed this aspect of the case, 389 F.Supp. at 6–11, and will not review the record at length again in this opinion. I should comment, however, that nothing the Secretary says changes my conclusion. A close study of the record reveals not one iota of testimony or documentary evidence that supports the decision to impose penny-by-penny pricing *upon Order No. 4.* All the evidence, either on direct or cross-examination, supports bracketed pricing in the Delaware Valley.

The only evidence the Secretary points to that allegedly opposes bracketed pricing *as applied to the Delaware Valley* is that of

Russell T. Dethlefsen.[14] Unfortunately, the Secretary completely misinterprets the testimony. As Mr. Dethlefsen pointed out, while he opposed 20 cent brackets—believing 15 or 30 cent brackets superior—"I am of the opinion that almost any form of bracketing is better than no bracketing.[15] Therefore, my conclusion that the Secretary's August, 1969, order was not based upon substantial evidence must stand.

The Secretary also argues that I have misinterpreted his duties under the Act and have taken away his discretionary authority under the rulemaking powers delegated to him by Congress. I am keenly sensitive about judicial interference in an area that is placed under the Secretary's competency by Congress. On the other hand, the Secretary must also understand that he cannot abuse his discretionary function. By statute and *his own* regulations, each milk pricing order must be based upon the evidence introduced at a hearing called by the Secretary. He, in turn, *may*, solely at his discretion, issue a milk pricing order. The Secretary, of course, may refuse to issue any order. But, if there is to be an order, it must be supported by substantial evidence. 389 F.Supp. at 7; see *Oak Tree Farm Dairy, Inc. v. Butz*, 390 F.Supp. 852, 859 (E.D.N.Y.1975). Furthermore, the decision itself must include findings based upon evidence introduced at a hearing, and may not, as in this case, totally rely on amorphous agency expertise. This follows from the requirement that each administrative agency decision rest upon some reasoned basis so that those outside the agency can understand what has taken place without reliance on ad hominem explanations, such as the Judicial Officer's comment in this case that there was no need to explain the concept of interregional price alignment since it "is as desirable as motherhood." 389 F.Supp. at 8.

For the above reasons, I refuse defendant's motion to reconsider my decision.

---

14. N.T. 287–90, June, 1969, Transcript.

15. Exhibit C, Reply Brief of Abbotts Dairies to Government Brief on the Question of An Appropriate Order.

## IV. *The Appropriate Form of Relief*

In response to my January 9, 1975, decision granting summary judgment in its favor, Abbotts has submitted the following proposed order on the question of the appropriate prospective relief:

2. This matter and the record herein, is remanded to the Secretary of Agriculture with directions to either promulgate such amendment to Federal Order No. 4, as will provide bracketing in that Order in accordance with the record, or to convene, within a reasonable time, such hearing as the Secretary may in his discretion find necessary to consider institution of bracketing in Federal Order No. 4.

The Secretary takes the position that insofar as prospective relief is concerned, the case is moot. He argues that succeeding milk pricing orders which have not been challenged and are presumptively valid preclude any relief that would require the Secretary to reconsider the question of bracketed pricing for Order No. 4. I have considered the question of mootness in my previous decision. There I made it clear that because the subsequent orders referred to by the Secretary merely preserved and brought up to date his original order of August 20, 1969, the case was not moot. 389 F.Supp. at 11–12 and cases cited therein. Furthermore, to accede to the Secretary's reasoning would be to relinquish an important power of the federal courts under the Act. Congress assigned to the federal courts the power to review milk pricing orders, even if the scope of that review is narrowly circumscribed. But these are not speedy proceedings. The issues involved are often exceedingly difficult. Moreover, before a plaintiff may seek judicial review he must first exhaust his administrative remedies. For example, in this case, the order was promulgated on August 1, 1969—today, in late-1976, an almost [16] final judgment is about to be rendered. On the other hand, as the record before me amply demonstrates, because of ever-changing conditions in the milk industry, new or amended pricing orders are issued quite frequently.

Following the Secretary's reasoning, there would seldom be an effective legal remedy for an illegal milk pricing order because in most cases by the time the legality of the order could be litigated it would have been superseded by later orders. See *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, reh. denied, 410 U.S. 959, 93 S.Ct. 1409, 35 L.Ed.2d 694 (1973).

■ I do think Congress intended that the courts have the power to impose the same legal remedies for the correction of an illegal milk pricing order as would be appropriate in any other administrative review proceedings. Therefore, in my judgment, I am not precluded from ordering prospective relief in this case.

■ However, just as it is clear that I may order some form of prospective relief, it is equally clear that I may not, as Abbotts suggests, merely order the Secretary to reinstitute bracketed pricing. If I am incorrect in concluding that bracketed pricing was still in effect prior to the August 20, 1969, order, then I would have no power to order the Secretary to adopt bracketed pricing; the adoption of a milk pricing order is left by Congress to the Secretary of Agriculture, not the federal district courts. But even if I am correct in concluding that bracketing was in effect prior to the illegal August 20th order so that I would have the power to order it reinstated, to do so would not be appropriate. As a practical matter, much may have changed in the Delaware Valley milk industry in the last seven years. Markets, costs, consumer purchasing habits, all may be different. To base a decision on a six year old record would not be proper.

The Act itself provides:

If the Court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with direction either 1) to make such ruling as the court shall determine to be in accordance with law, or 2) take such further proceedings as in its opinion the law requires.

16. See note 2 supra.

7 U.S.C. § 608c(15)(B). Guided by these directions from Congress the appropriate remedy in this case is to require the Secretary to convene within 90 days of this order a hearing to consider what pricing method shall be applicable to Order No. 4.[17] The Secretary shall allow all interested parties to submit proposed pricing orders and any appropriate evidence. Thereafter, using his discretion, the Secretary may either, 1) not adopt any pricing order, or 2) adopt one of the pricing proposals (including the system presently in use) that is supported by substantial evidence from the record. The Secretary's discretion will be limited only in that he may not, by refusing to act, continue the present pricing system.

An appropriate order will be entered.

17. Because Order No. 4 now includes areas that were not included back in 1969, the Secretary will of course have to consider the appropriateness of bracketed pricing in light of these changes.