**WINDHAM CREAMERY, INC.,**
Appellant,

v.

**Orville L. FREEMAN, Secretary of
Agriculture.**

No. 15078.

United States Court of Appeals
Third Circuit.

Argued April 1, 1965.

Decided Aug. 13, 1965.

Before HASTIE and FREEDMAN, Circuit Judges, and WEBER, District Judge.

HASTIE, Circuit Judge.

In this proceeding, authorized by section 8c(15) (B) of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 608c(15) (B), Windham Creamery, Inc., a fully regulated handler of milk that operates a pool plant in Windham, New York, contends that so much of the New York—New Jersey Milk Marketing Order,[1] hereinafter designated Order No. 27, as establishes a different classification and a higher price to be paid by handlers for fluid cream distributed in the New York City area than for the same product disposed of elsewhere in the New York—New Jersey marketing area is invalid either on its face or as applied.

Under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 608c, milk prices are subject to a comprehensive plan of regulation designed to insure a fair return to farmer producers. The Act, recognizing that milk has a variable market value dependent upon its ultimate use, authorizes the Secretary of Agriculture to classify milk in the light of that circumstance and to establish on a regional basis minimum prices for each class of milk to be paid by "handlers".[2] Instead of paying these prices directly, all handlers in a regulated region pay their producers a prescribed uniform blend price based on the average value of milk produced in the area and thereafter settle their accounts by either paying into or drawing from a producer settlement fund the difference between the actual utilization value of the milk they handled and the blend price. See 7 U.S.C. § 608c(5).

As a general rule milk is classified at the last plant to which it is shipped. See 7 C.F.R. § 927.33 (Supp.1961). The

Edward W. Currie, Matawan, N. J., for appellant.

Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., David M. Satz, Jr., U. S. Atty., Frederick B. Abramson, Atty., Dept. of Justice, Neil Brooks, Asst. Gen. Counsel, Dept. of Agriculture, Washington, D. C., on the brief), for appellee.

1. 7 C.F.R. § 1002.37 (Supp.1965), superseding 7 C.F.R. § 927.37 (Supp.1961).

2. "Handlers" of the type here involved purchase the raw product from dairy farmers, process it and resell milk and milk products in commerce. For the statutory definition of "handlers", see 7 U.S.C. § 608c(1).

milk involved in this controversy was shipped by Windham to the plant of Fairlawn Dairies, Inc., an affiliated corporation in Fairlawn, New Jersey, where it was processed into fluid cream. The cream was sold to American Export Lines, Inc., for delivery to the purchaser's ships, some docked in New York City and others in Hoboken, New Jersey. The cream was purchased for shipboard use after sailing, and none of it was actually consumed within the territorial waters of the United States.

Order No. 27 classifies cream as a class II product (on a descending utilization value scheme from I to III) unless it "is delivered to a plant or a purchaser outside the New York metropolitan district and remains outside the New York metropolitan district", in which case it is class III. See 7 C.F.R. § 927.37 (Supp. 1961). The order so defines "New York metropolitan district" as to include New York City and its docks and to exclude the adjacent New Jersey area, including the Hoboken docks, thus subdividing the New York—New Jersey marketing area for particular purposes. See 7 C.F.R. § 927.3 (Supp.1961). Accordingly, the Market Administrator required Windham to pay class II prices for the cream delivered to ships docked in New York City as contrasted with class III prices for the same product delivered to ships docked in Hoboken, New Jersey.

Windham unsuccessfully challenged this ruling before the Secretary of Agriculture. It then brought suit in the court below. The present appeal has been taken from summary judgment entered in favor of the Secretary. D.N.J. 1964, 230 F.Supp. 632.

Windham's first contention is that a difference in classification of a uniform product based on geographic movement and place of delivery to the purchaser, is not in compliance with the statutory scheme and requirement of "[c]lassifying milk in accordance with the form in which or the purpose for which it is used". 7 U.S.C. § 608c(5) (A). The Secretary agrees that the form of the two classes of cream is the same but claims that, within the meaning of the statute, "the purpose for which it is used" has properly been found to be different.

The evolution of the New York—New Jersey milk order to its present state has relevance for the problem here presented. Until 1957 the scheme of regional administration established and defined a "New York metropolitan" marketing area, consisting of and limited to New York City and three neighboring suburban counties in New York state. See 7 C.F.R. § 927.3 (1955). The New York metropolitan milk order classified cream disposed of within the marketing area by a regulated handler as a class II product, while cream disposed of by such a handler outside the then marketing area was made class III. See 7 C.F.R. § 927.37 (1955). In 1957 an amended order enlarged the marketing area to include northern New Jersey and new sections of upstate New York, in addition to the metropolitan area. See 22 Fed. Reg. 4195 (1957). However, the pre-existing dichotomy in cream classification was maintained by subdividing the enlarged marketing area. The original New York metropolitan marketing area was denominated the "New York metropolitan district", within which a basic class II designation of cream was retained. However, cream delivered and remaining in the other parts of the marketing area was placed in class III, as it had been under the earlier order. This difference reflected a finding that the economic value of the commodity was lower outside of the New York metropolitan area where less stringent local health regulations and other factors created competitive conditions different from those within the metropolitan area. See 22 Fed.Reg. 4195 (1957). It is the resulting distinction in classification and price, depending upon place of delivery, of which Windham complains.

■ Over the years the Secretary has taken the position that the achievement of a price structure which respects differences in the utilization value of milk and milk products is a basic concern and objective of the legislative scheme of

regulation. Accordingly, it has been reasoned that statutory authority to classify milk according to "the purpose for which it is used" comprehends classification determined by differences in utilization value. The utilization value of a given form of milk may differ from community to community because of circumstances characteristic of the locale; for example, differences in the requirements of health laws in various communities. Thus, in the present case, health standards and requirements with reference to the processing and distribution of milk have been found to be significantly different in the New York metropolitan district than in neighboring New Jersey communities with the result that cream has a higher utilization value in the metropolitan district than in the outlying New Jersey area. Nothing before us indicates that this finding is unwarranted. It seems reasonable, therefore, and respectful of the statutory scheme to assign a lower classification to milk delivered and utilized outside of the New York metropolitan district than to the same product handled and distributed within it. It is also relevant that throughout the 25 year history of this basic legislative scheme the Secretary has employed similar geographic movement as a proper basis of classification without legislative or judicial interdiction. See, e. g., 4 Fed.Reg. 376 (Kansas City area order, § 913.4(b)). All of these circumstances considered, we think it would be improper for us to invalidate such a classification so long as it is grounded, as now appears, in a significant factual difference in utilization value.

■ It remains to consider Windham's contention that even if classification based on geographic movement of a commodity is permissible where the distinguishing movement carries the commodity outside of a marketing area, it is not permissible to make different classifications for situations where all relevant movements are only from one part of a marketing area to another. We think this position could be sound only if no significant difference in utilization value of the commodity were found in the designated separate parts of a marketing area. For it is that difference, rather than geography per se, which provides the rational basis for any geographic classification.

In the present case, the challenged order gives effect to the very differences in utilization value, expressed in terms of the same separate localities that served to distinguish class II cream from class III when those localities were not in the same marketing area. No relevant factor has changed except the boundaries of the marketing area. We find nothing in the statute that requires that an otherwise rationally justified geographic classification be invalidated merely because the localities involved are all within the same marketing area.

Making an entirely different point, Windham argues that the challenged classification of cream sold to ships, insofar as it is made applicable to a commodity intended for use and in fact used exclusively on the high seas in the course of foreign commerce, is an unauthorized regulation of foreign commerce.

■ Without considering the extent of the Secretary's authority under the Act to regulate foreign commerce, we think the relation of the regulation and the milk in question to domestic commerce is adequate to justify what has been done as an exercise of the Secretary's unquestioned power in the area of interstate commerce. Section 927.3 of Order No. 27, 7 C.F.R. § 927.3 (Supp. 1961), expressly includes within the New York—New Jersey marketing area all piers and docks connected with the included land mass and "all craft moored thereat". In one view, this merely gives effect to geographic reality. Moreover, the Secretary has explicitly found with reference to milk delivered to docked ships for consumption thereon—so called "commissary milk"—that "an indeterminable portion of commissary milk can reasonably be expected to be consumed while the carrier is moored within the legal bounds of the marketing area". 16 Fed.Reg. 11352 (1951). No basis ap-

pears here for challenging the correctness of this general finding. It provides a reasonable basis for extending a scheme of domestic regulation to such milk.

■ It is also relevant that in origin and handling the milk in controversy was part of that complex of domestic production, processing and disposition which is a phenomenon and a problem of that domestic commerce with which the statute and its administration are primarily concerned. Thus, the Secretary has permissibly found that "milk delivered to ships for consumption thereon * * * has been supplied by pool handlers and from processing plants located within the marketing area. Since such plants are permitted to handle only milk from approved sources, it follows that milk furnished to ships and institutions from marketing area plants can come only from approved sources." 16 Fed.Reg. 11352 (1951).

■ When the matter is thus analyzed it appears that all of the relevant events and consequences justifying classification are local or domestic in character. The incidental fact that, after being subjected to the regulatory scheme in the course of domestic processing and disposition by a handler, the commodity in some instances moves in foreign commerce does not derogate from the Secretary's power to regulate what is in fact and law an integral part of domestic production and marketing.

■ A closely related contention is made that a classification on the basis of delivery in New York is arbitrary when applied to milk proved to have been delivered to a purchaser for consumption on the high seas. But the normal anticipation is that milk delivered by handlers to purchasers in a community will be consumed there and, in any event, will be subjected to those local health regulations that affect utilization value. To re-

quire the subordination of this normal expectation to the actual experience of each quantity of milk sold might well be burdensome and impractical to the extent of impairing effective classification. We think this consideration in itself is sufficient to warrant disregard of the place of actual consumption.

■ Finally, the petitioner urges that a fiction of "constructive delivery" on the high seas should be applied to the milk delivered at New York piers, thus entitling such milk to the lower classification which attends delivery outside of the New York metropolitan district. The petitioner points out that a concept of "constructive delivery" was approved and applied in Dairymen's League Co-op. Ass'n v. Brannan, 2d Cir. 1949, 173 F.2d 57, 62–63, cert. denied, 1949, 338 U.S. 825, 70 S.Ct. 73, 94 L.Ed. 501. But there, in an effort to avoid a higher classification applicable to milk delivered to a purchaser in an "approved" county, a handler accepted formal delivery in an "unapproved" county and immediately moved the milk to its plant in the "approved" county. The court sanctioned the higher classification for this milk, treating it as "constructively" delivered in the "approved" county. This application of a fiction may well be warranted to avoid circumvention of a regulation by deliberate subterfuge. But a device utilized to thwart an attempted evasion of a classification scheme need not be employed to enable parties to escape the normal consequences of their agreed and actual conduct under the general scheme of classification.

While Windham has advanced still other arguments, we think they have been adequately analyzed by the Secretary and the court below, and we think they do not require further discussion. We have considered all of them and reject them as unsound.

The judgment will be affirmed.