**INTER-STATE MILK PRODUCERS' COOPERATIVE**

v.

**Earl L. BUTZ, Secretary of Agriculture of the United States of America.**

**Civ. A. No. 72–1079.**

United States District Court, E. D. Pennsylvania.

March 26, 1974.

Willis F. Daniels, Harrisburg, Pa., Donald F. Copeland, Philadelphia, Pa., (local counsel), for plaintiff.

Richard R. Galli, Asst. U. S. Atty., Philadelphia, Pa., Victor Palmer (Dept.

of Agriculture), Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GORBEY, District Judge.

This is an action brought pursuant to § 8c(15)(B) of the Agricultural Marketing Agreement Act of 1937 (7 U.S.C. § 608c(15)(B) ), seeking review of a final determination by a judicial officer of the Department of Agriculture which dismissed plaintiff's petition. Plaintiff sought to overturn a decision by the Market Administrator to reclassify certain milk shipped by plaintiff. The defendant has moved this court to grant summary judgment in its favor. Both parties and this court agree that there are no facts in dispute. For the reasons stated in the following memorandum, we will deny defendant's motion for summary judgment, and since there are no facts in dispute, we will treat the case as though plaintiff has filed a cross motion for summary judgment, which motion is granted. See 6 Moore's Federal Practice, § 56.12.

This case concerns a dispute over the enforcement by the Department of Agriculture of Milk Marketing Order No. 16 (7 C.F.R. part 1016) which had been duly promulgated and issued by the Secretary. This order was effective January 1, 1960, and continuing through the months in question of January, February and March, 1969.[1] It covered milk handling in the upper Chesapeake Bay area. Specifically, it contains provisions which (a) classify milk; (b) establishes a minimum price for each use classification; (c) provides a method for distribution of the total value of all milk received by all handlers among all producers at a uniform blended or average price, computed each month by the Market Administrator in accordance with the provisions of the order; and (d) other miscellaneous provisions identifying the market area to be regulated, the milk to be priced, the persons (handlers) to be regulated, the method of reporting receipts and uses of milk by all regulated handlers, and establishing an agency known as the Market Administrator to administer the order.[2]

Each handler's minimum obligation for milk is determined by multiplying the quantity of milk used by him in each of the classes established by the order, times the minimum price for each class. These prices are subject to certain differentials not at issue in this case. Plaintiff in this case is admittedly a handler as defined in Order No. 16. For the months January, February and March, 1969, plaintiff reported certain quantities of milk as being used in Class II as defined in the Order. After audit and investigation, the Market Administrator concluded that the milk should have been reported as Class I. He so notified the plaintiff and charged it with the difference between its value as originally reported (*i. e.*, Class II) and its value as Class I. In reclassifying this milk, the Market Administrator relied on § 1016.44 of the Order, which provides:

"§ 1016.44 *Transfers.*

Skim milk and butterfat in the form of a fluid milk product *shall be classified*: . . . .

(c) *As Class I*, if transferred or diverted in bulk to a nonpool plant that is . . . located 300 miles or more from the City Hall in Baltimore, Md.;

(d) *As Class I milk*, if transferred or diverted in bulk to a nonpool plant that is . . . located less than 300 miles by the shortest hard-surfaced highway distance as determined by the market administrator from the City Hall in Baltimore, Md., unless all the requirements of subparagraphs

---

1. Order No. 16 has been replaced by Order No. 4 which does not contain the provisions in question.

2. For a discussion of the general scheme of milk regulation, *See* Lehigh Valley Cooperative Farmers, Inc., et al. v. United States et al., 370 U.S. 76 at 78, 82 S.Ct. 1168, at 1169–1170, 8 L.Ed.2d 345 (1962).

(1) and (2) of this paragraph are met, in which case the skim milk and butterfat so transferred or diverted shall be classified in accordance with the assignment resulting from subparagraph (3) of this paragraph:

(1) The transferring or diverting handler claims classification pursuant to . . . subparagraph (3) . . .

(2) The operator of such nonpool transferee plant maintains books and records showing the utilization of all skim milk received at such plant which are made available if requested by the market administrator for the purpose of verification;

(3) The skim milk and butterfat so transferred shall be classified on the basis of the following assignment of *utilization at such nonpool plant . . .*"

[emphasis added.]

During the period of time in question, there was a glut in the local milk market. Plaintiff was, pursuant to the terms of Order No. 16, the handler of certain milk which ordinarily went to poolplants of its customer, Lancaster Milk Company. Pursuant to arrangements between Lancaster Milk Company and Kirk Milk Products, Inc., during the months of January, February and March, 1969, the milk went instead from the farms of petitioner's members to receiving stations of Kirk Milk Products, Inc. in Lemoyne, Pennsylvania, and Hagerstown, Maryland, where it was reloaded in the same form of bulk fluid milk product and transported to processing plants of Pet Milk Company, in Abingdon, Virginia and the Borden Company, in Chester, South Carolina. None of the plants involved, other than that of the Lancaster Milk Company, was a pool plant. The receiving stations of Kirk were located within 300 miles of the Baltimore City Hall, and the Pet and Borden plants were more than 300 miles distant. Under paragraph (d) of §

1016.44, milk transferred to nonpool plants within 300 miles is classified on the basis of proven actual "utilization at such nonpool plant". Since the milk in question was eventually transferred to a nonpool plant in excess of 300 miles from the City Hall in Baltimore, the Market Administrator ruled that pursuant to paragraph (c), the milk should be classified as Class I, irrespective of its eventual use.

There is no dispute that the milk in question was in fact utilized as Class II milk. However, the Secretary maintains that the clear import of the language of Order No. 16 precludes any investigation as to the ultimate use so long as the milk was transferred to a nonpool plant in excess of the 300 miles. As a result of the Administrator's reclassification, plaintiff's liability to the producer's settlement fund was increased by a sum in excess of $77,000.00.[3]

Plaintiff first argues that the Secretary erred in his interpretation that Order No. 16 does not allow any investigation as to the ultimate use of milk which is transferred to a nonpool plant located more than 300 miles from the City Hall in Baltimore. Plaintiff maintains that the order should be construed to allow a rebuttable presumption.

A review of the language of Order No. 16, leaves no doubt as to its intent. It is clear that Order No. 16 was designed to establish a conclusive classification for any fluid milk which was transferred to a nonpool plant located more than 300 miles from City Hall in Baltimore. The use of the word "shall" in paragraph (c) of § 1016.44 leaves no doubt as to the proper interpretation of the Order. This brings us to plaintiff's next argument which is his primary one. Plaintiff urges that the 300 mile provisions of Order No. 16 is not authorized by the statute.

The relevant sections of Order No. 16 were adopted pursuant to §

---

**3.** The record does not reveal the exact amount but the parties agree it is a sum certain which they can determine.

8c(5)(A) of the Agricultural Marketing Agreement Act of 1937, as amended (7 U.S.C. § 608c(5)), which establishes the Secretary's power to issue orders concerning classification and pricing of milk. This section reads in pertinent part as follows:

"(5) In the case of milk and its products, orders issued pursuant to this section shall contain one or more of the following terms and conditions, and (except as provided in subsection (7) of this section) no others:

(A) *Classifying milk in accordance with the form in which or the purpose for which it is used,* and fixing, or providing a method for fixing, the minimum prices for each such use classification which all handlers shall pay, and the time when payments shall be made, for milk purchased from producers or associations of producers. Such prices shall be uniform as to all handlers, subject only to adjustments for (1) volume, market, and production differentials customarily applied by the handlers subject to such order, (2) the grade or quality of the milk purchased, and (3) the locations at which delivery of such milk, or any use classification thereof, is made to such handlers."

[emphasis added.]

The plaintiff argues that pursuant to this statute, the provisions of Order No. 16 essentially classify the milk according to the distance which it is moved. This, plaintiff argues, is not authorized by the statute. Defendant argues that the Secretary is merely classifying the milk in accordance with the form in which it is used, and that the Secretary is free to choose the point at which he determines the use; relying on the case of Waddington Milk Co. v. Wickard, 140 F.2d 97 (2d Cir. 1944). In this case, the court held that the order which allowed the Administrator to classify milk according to its use at the initial receiving plant of the handler is valid. Plaintiff in that case had argued that classification on use must be made in accordance

with its use by the ultimate consumer. After a discussion of the purposes of the Act, the court stated at page 101:

"Given the conditions and the purpose, there appears to be nothing unreasonable in selecting as the controlling point for determination of the form in which milk is to be classified for the fixing of wholesale prices the time when it leaves the initial receiving plant of the distributor. This gives the latter reasonable opportunity to determine appropriate utilization of the milk without allowing him to await the more or less fortuitous circumstances which may determine the final disposition of the milk to the ultimate consumer."

In the case at bar, we do not have the situation which was existent in the Waddington case, for in the Waddington case, the order provided for classification based on its use at a particular plant which was not necessarily the use by the ultimate consumer. In the case at bar, the order provides for classification according to its ultimate use, unless the milk moves more than 300 miles. Here, what is fortuitous is not the ultimate use, but whether or not the milk traveled 300 miles. This has no reasonable relationship to the classification of milk and is not consistent with the statutory mandate of classification based on "the form in which or use to which" the milk is put.

Defendant also relies on the case of Queensboro Farms Products v. Wickard, 137 F.2d 969 (2d Cir. 1943), for the proposition that "Congress gave the Secretary [the] power at least: to establish a conclusive 'use classification' on the sole basis of the form of the milk at the time when the handler moves it from his plant for delivery to his customer." We have a very different situation in the case at bar than was existent in the Queensboro case. Here, milk is classified according to its utilization at the plant to which it is transferred or diverted, except if the transfer or diversion is to a plant located 300 miles or more from the City Hall in Baltimore,

Maryland, then the milk is conclusively classified as Class I. The effect of this provision in the case at bar has been to classify the milk solely on the basis of the distance that it moved. This is not authorized by the statute. In so holding, we are cognizant of the dissenting opinion in Queensboro written by Judge Learned Hand in which Judge Hand stated at page 983:

"It may well be, as my brothers say, that the industry is extravagantly difficult to regulate; if so, I agree that we should accord great latitude in its administration. Had the orders imposed the severest burden upon 'handlers' to prove that the 'form' in which they moved milk, or even 'held' it, was not the 'form' in which it was 'used', I should have readily assented."

The statute authorizes the Secretary to classify on the basis of use. The Secretary is given extremely wide latitude as to what use is used for the basis of classification. However, we fail to see how a distance of 300 miles has any bearing on use. The Secretary attempts to argue that 300 miles has a bearing on use in that their experience has found that if milk is shipped to a plant further than 300 miles from City Hall in Baltimore, Maryland, the economics of shipping would require that this milk be used as Class I. If that were the case, why did the transaction at bar take place? It is obvious that this argument is primarily aimed at justifying the 300 mile limit as opposed to some other distance. The real purpose for setting any such distance is ease of administration. As Judge Hand noted in his dissent to Queensboro, the Secretary could place the burden and expense of rebutting a presumption of Class I upon the handler. We see no justifiable reason for a conclusive presumption of Class I use once milk is moved over 300 miles.

Administrative interpretation of regulatory legislation is normally given considerable weight. This is especially so in a complex area of regulation such as we have in the case at bar. Zuber v. Allen, 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969). However, as the Court stated in the Zuber case at 396 U.S. 193, 90 S.Ct. at 328:

"The Court may not, however, abdicate its ultimate responsibility to construe the language employed by Congress."

The effect of the relevant provisions of Order No. 16 appears inescapable; that is, that the controlling criteria for classifying petitioner's milk was the distance which it moved. Ease of administration is certainly a factor to be considered in reviewing the Secretary's implementation of § 8c of the Act, it cannot serve as the only basis upon which to classify milk. The majority in Queensboro Farms Products v. Wickard, *supra*, recognized this stating at page 980 of 137 F.2d:

"The Secretary cannot, of course, deviate from the requirements of the statute merely to avoid difficulties of administration or to facilitate enforcement of the Act . . . ."

In the case of Windham Creamery, Inc. v. Freeman, 350 F.2d 978 (3d Cir. 1965), the court held that the Secretary could properly classify cream as Class II if it was shipped to the New York harbor, and Class III if it was shipped to Newark or Hoboken. The court held that there was a significant difference in utilization value of the commodity,[4] and that difference rather than geography per se, provided the rational basis for any geographic classification. In the case at bar, the government argues the rational basis to be ease of administration, and they justify the 300 mile limit on market experience. As our ear-

---

4. The court in Windham found at page 981: "for example . . . . health standards and requirements with reference to the processing and distribution of milk have been found to be significantly different in the New York metropolitan district than in neighboring New Jersey communities . . . ."

lier discussion holds, classification based purely on ease of administration is not authorized by the statute.

Accordingly, summary judgment will be granted in favor of the plaintiff. Since the record does not contain an exact accounting as to a specific amount involved, the parties will stipulate to this amount and submit it to the court within twenty (20) days of the date of this order.