**OAK TREE FARM DAIRY, INC.,**
**Plaintiff,**

v.

**Earl L. BUTZ, Secretary of Agriculture of the United States, Defendant.**

**72 C 1402.**

United States District Court,
Eastern District of New York.

Feb. 18, 1975.

Harry Polikoff, New York City, Attorney for plaintiff.

David G. Trager, U. S. Atty., Eastern District of New York by Lloyd H. Baker, Asst. U. S. Atty. and Dennis Becker, U. S. Department of Agriculture, for defendant.

OPINION

NEAHER, District Judge.

Plaintiff, Oak Tree Farm Dairy, Inc. ("Oak Tree"), brought this action pursuant to the Agricultural Marketing Agreement Act of 1937, as amended ("the Act"), 7 U.S.C. § 601 et seq., seeking review under § 608c(15)(B) of a final decision of the defendant Secretary of Agriculture ("the Secretary") which upheld the validity of a portion of Milk Marketing Order No. 2 ("Order 2"), 7 C.F.R. 1002, promulgated under 7 U.S.C. § 608c(1). Defendant has moved for summary judgment and plaintiff has similarly cross-moved, both parties agreeing there are no material issues of fact.

I.

Oak Tree is a licensed milk handler[1] conducting business in the New York-

1. The term "handler" is defined generally in the statute at 7 U.S.C. § 608c(1) and more specifically in the regulations at 7 C.F.R. § 1002.7 (1974). See n. 3 infra.

**854**

New Jersey marketing area, the area subject to Order 2. On June 29, 1970, Oak Tree petitioned the Secretary for a hearing, seeking a review of the validity of § 1002.42 of Order 2.[2] Following a hearing, the departmental judicial officer finally dismissed the petition, finding the challenged order to be fully in accord with the Secretary's authority under the Act. He further found that plaintiff had failed to overcome the presumption of the existence of facts which justify § 1002.42. On October 3, 1972, plaintiff's request for reconsideration was denied. This action was timely filed thereafter and subsequently oral argument was heard on the respective motions for summary judgment now before the court.

The legislative scheme of the Act under which Order 2 was made is too complex to be set forth at length here, and has been adequately treated in Zuber v. Allen, 396 U.S. 168, 177, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); Lehigh Valley Coop. Farmers, Inc. v. United States, 370 U.S. 76, 78, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962); and United States v. Rock Royal Co-Operative, Inc., 307 U.S. 533, 542–48, 59 S.Ct. 993, 83 L.Ed. 1446 (1939).

In brief, the Act provides a method for fixing a uniform, average blend price which must be paid to all producers[3] regardless of the actual use to which their milk is put. In general, milk used in its fluid state is placed in Class I, while milk used in the manufacture of other dairy products, such as butter and cheese, is placed in Class II. Because of the lower processing costs incurred by a handler dealing in fluid milk, producers on an unregulated market would command a higher price for milk used as Class I than for milk earmarked for Class II use, even though the products sold to the handlers are otherwise indistinguishable. It was to prevent cutthroat competition among farmers for the Class I market, and to counter the effects upon the consumer of seasonal fluctuations in supply, that the Act was passed. Under the present scheme, since the handlers of Class I milk ordinarily receive their milk supply at a blended price below its use value and Class II milk handlers, although paying the same blended price, may have to pay more than the Class II use value, the handlers make corresponding payments to and withdrawals from an equalization pool—the Producer Settlement Fund—to maintain the uniform blended price to the producers. See Dairylea Cooperative, Inc. v. Butz, 504 F.2d 80, 84–85 (2 Cir. 1974).

Order 2, like other milk marketing orders, classifies milk according to its ultimate use by the handler as either Class I or Class II milk. Oak Tree is almost exclusively a Class I milk handler. Section 1002.42 of Order 2, about which Oak Tree complains, deals, however, with the classification of "shrinkage." Shrinkage refers to plant loss of milk by reason of adhesion, evaporation, and spillage occurring during transportation, processing, and laboratory sampling. It is a handler's loss that need not be borne by producers because considered an incident "of the business of receiving and process-

---

2. Although plaintiff raised other claims below, the only one presented here is that with regard to 7 C.F.R. § 1002.42 (1974). The petition was filed with the Secretary pursuant to 7 U.S.C. § 608c(15)(A), which provides:

"Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and praying for a modification thereof or to be exempted therefrom. He shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President. After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law."

3. The term "producer," although not defined in the Act, is defined at 7 C.F.R. § 1002.6 (1974). Ordinarily a producer is a dairy farmer, while a handler is a milk processor somewhere up the chain from the raw to the finished dairy product.

ing milk receipts into the forms in which they are sold or disposed of from the handler's plant [and is] directly related thereto." [4]

The classification in which shrinkage is accounted for determines the amount a handler must pay for that lost milk. Section 1002.42 provides the following classification scheme:

"Shrinkage shall be classified at each plant or unit as follows:

"(a) Compute the total shrinkage of skim milk and butterfat respectively at each plant or unit.

"(b) Such shrinkage shall be assigned pro rata to classes of use in accordance with the respective volumes of skim milk and butterfat actually accounted for in each class: *Provided,* That shrinkage assigned to Class II shall not exceed 2 percent of the skim milk and butterfat, respectively, in such class actually accounted for and any excess thereof shall be classified as Class I–A." [5]

Since Oak Tree handles Class I milk almost exclusively, under Order 2 it must account for almost all shrinkage loss experienced in its operations at the Class I level. Having already paid the producer the uniform blended price for the milk lost through shrinkage, this means that in accounting for shrinkage Oak Tree will almost always be making payments to, rather than receiving proceeds from, the equalization pool.

The Secretary has promulgated 74 Marketing Orders for particular milk marketing areas, *Dairylea Cooperative, supra,* 504 F.2d at 84, and readily admits that the shrinkage classification provided in Order 2 for the New York-New Jersey marketing area is unique. In all other marketing areas, a stated percentage, *e. g.,* 2%, of the monthly inventory, is fixed as an upper limit of shrinkage which may be classified as Class II, *regardless of use,* and excess shrinkage, if any, is normally classified as Class I, regardless of use. In the New York-New Jersey marketing area, the 2% upper limit on Class II shrinkage still applies, but that 2% must represent shrinkage of milk actually used in Class II. As in other areas, excess shrinkage is classified as Class I regardless of use.

Because shrinkage in any reasonably efficient operation would appear not to exceed 2%, 33 F.R. 7194 (May 15, 1968), the regulatory scheme boils down to a simple economic fact for Oak Tree. Since it is exclusively a fluid milk processor in the New York-New Jersey marketing area, Oak Tree's plant loss cost is proportionately and markedly greater than it would be in any other marketing area. It is this disparity which forms the underlying basis for plaintiff's two-pronged attack on § 1002.42.

## II.

Plaintiff raises two issues for review, both fairly and succinctly stated by defendant:

"(1) Whether the shrinkage provision of Order No. 2 is contrary to Section 608c(5)(A) of the Act because shrinkage has no 'use value' to a handler, thereby precluding the Secretary from classifying it as a Class I–A product under the Order, which classification is for the highest 'use value'; and

"(2) Whether the shrinkage provision of Order No. 2 is contrary to Sections 608c(4) and 608c(11)(C) of the Act, Section 8 of the Administrative Procedure Act (5 U.S.C. 557(b)) and Section 900.13a of the Rules of Practice

---

4. Recommended Decision of the Judicial Officer, May 8, 1972, at 9 (Exh. 27 to Certified Administrative Record), which later became the final decision of the Secretary, August 31, 1972 (Exh. 31).

5. 7 C.F.R. § 1002.42 (1974). The term "Class 1–A," as used in the regulations, is essentially Class I fluid milk product disposed of within the marketing area, while Class I–B milk is Class I fluid milk product disposed of outside the marketing area, with certain exceptions that are not relevant here. 7 C.F.R. § 1002.41 (1974). For purposes of this case, the two are without any significant distinction, and will be referred to by the more general term, Class I milk.

and Procedure Governing Proceedings To Formulate Marketing Agreements and Marketing Orders (7 CFR 900.-13a) because the Secretary failed to make required findings and conclusions that it was necessary to treat shrinkage differently under Order No. 2 than under other milk marketing orders." Def.'s Reply Brief at 2. The Secretary maintains that § 1002.42 is not contrary to the Act for either of these reasons.

However, he urges preliminarily a different contention—that neither of those issues was raised by plaintiff below, nor considered or ruled upon by the judicial officer, and may not be injected into this review proceeding, which is not a *de novo* fact-finding process. Lewes Dairy, Inc. v. Freeman, 401 F.2d 308, 315 (3 Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1187, 22 L.Ed.2d 455 (1969); Abbotts Dairies Division of Fairmont Foods, Inc. v. Hardin, 351 F.Supp. 561, 566 (E.D.Pa.1972); M. H. Renken Dairy Co. v. Wickard, 45 F.Supp. 332, 335 (E.D. N.Y.1942); New York State Guernsey Breeders Co-op., Inc. v. Wallace, 28 F. Supp. 590, 592 (N.D.N.Y.1939), aff'd 141 F.2d 805 (2 Cir.), cert. denied, 323 U.S. 725, 65 S.Ct. 58, 89 L.Ed. 582 (1944). Plaintiff does not dispute the wisdom of deferring to agency expertise on questions of fact, but replies that the issues were raised below.

■ The court's jurisdiction under § 608c(15)(B) is clearly limited to determining whether the Secretary's ruling is "in accordance with law." See New York State Guernsey Breeders' Co-op v. Wickard, *supra*, 141 F.2d 805. That is not to be read as a license to entertain legal questions at large without regard to the factual context in which issues were heard and decided. Due consideration for the language of § 608c(15)(B) must take into account both the Secretary's expertise in an area of complicated regulation,[6] and the fundamental doctrines of exhaustion, ripeness and primary jurisdiction which operate to delimit the scope and availability of judicial review of administrative action. The Supreme Court's language on this point is as appropriate to the complexities of milk marketing orders as it was to review of the Alaska Unemployment Compensation Law:

"A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action."

Unemployment Compensation Commission of Alaska v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946); K. Davis, Administrative Law Text § 20.06 (3d ed. 1972).

■ The administrative record in this case contains only fleeting and conclusory references to either of the issues sought to be adjudicated here. However, the deficiency is not entirely one-sided. Plaintiff did raise the findings issue in its final amended petition, but provided little, if any, amplification of the conclusory allegation that Order 2's differing treatment of shrinkage is not supported in the promulgation hearings by sufficient findings or evidence. There is, however, some uncertainty as to

---

6. As Judge Frank has aptly noted:

"The milk problem is so vast that fully to comprehend it would require an almost universal knowledge ranging from geology, biology, chemistry and medicine to the niceties of the legislative, judicial and administrative processes of government." Queensboro Farm Products v. Wickard, *supra*, 137 F.2d 969, 975 (2 Cir. 1943).

Deferral to agency expertise is especially appropriate when the findings under attack relate to continuation of prior practice, which appears to be the case here. In such circumstances, review of more than one set of findings, made over the span of many years might be required to fully explore the validity of the challenged provision. See also *id.*, 137 F.2d at 980; Lawson Milk Co. v. Freeman, 358 F.2d 647, 650 (6 Cir. 1966); Crowley's Milk Co. v. Brannan, 198 F.2d 861, 865 (2 Cir. 1952) (Frank, J., dissenting).

whether plaintiff could have done more than simply raise the question.[7] In any event, this claim is not answered on the merits by the Secretary, despite his obligation to rule "upon the prayer" of the petition. 7 U.S.C. § 608c(15)(A), n. 2 *supra*.

As to the "handler value" issue, it is again clear that this issue was not fairly and fully considered below. There are oblique references in the record to the observation that shrinkage is milk of the lowest value to a handler, and therefore shrinkage should be classified at the lowest "use value" to the handler. The legal argument, however, was always couched in terms of the rationale for classification in other marketing areas and why that rationale was not fully applicable to the New York-New Jersey marketing area. In essence, the argument as raised was peripheral to the above findings argument rather than the present direct attack on Order 2 under § 608c(5)(A).[8] Yet the argument is hardly novel as presented here; adequate resolution of plaintiff's claims below would have implicitly required a finding that Order 2's shrinkage classification was in compliance with the ultimate statutory test of the validity of a milk classification—7 U.S.C. § 608c(5).

▮ In short, the court is satisfied that although a number of closely related yet different questions concerning shrinkage classification were treated below, further administrative exploration of the contentions raised here is required. There has been neither waiver by plaintiff nor shirking of statutory responsibility by defendant. Rather, there has been merely the refinement of legal issues, which is a natural consequence of the legal process. While it seems clear that much of the time consumed by this case is attributable to the lack of specificity in plaintiff's original administrative case, the issues now seem quite clear and ripe for administrative determination without regard to fault. The court's review, however, prompts some observations which may assist its speedy resolution upon remand, but which, of course, are not to be considered as binding rulings in this case.

### III.

Plaintiff contends that the Secretary is required under § 608c(5)(A) to classify milk according to its *value*, and that value varies with its use. Plaintiff correctly points out, that, in general, it is milk used as Class I that is of the highest value to handlers. See, *e. g.*, Dairylea Cooperative, *supra*, 504 F.2d at 85; Queensboro Farm Products Inc. v. Wickard, *supra*, 137 F.2d at 972. Taking the liberty of substituting "value" for "use" as used in § 608c(5)(A), plaintiff argues that since shrinkage has no value to a handler, to classify it in any but the classification of lowest *value*, i. e., Class II in this milk marketing order, is violative of § 608c(5)(A).

▮▮ The fact that the value of milk to a handler generally varies according to the use made thereof does not automatically require the Secretary to classify according to handler value. The Act is clearly intended to benefit producers.

---

7. As to whether evidence on the question might be allowed, compare United States v. Mills, 315 F.2d 828, 836 (4 Cir. 1963), with *Abbotts Dairies, supra,* 351 F.Supp. at 565.

8. Section 608c(5)(A) provides, where pertinent:
   "(5) In the case of milk and its products, orders issued pursuant to this section shall contain one or more of the following terms and conditions . . .
   "(A) Classifying milk in accordance with the form in which or the purpose for which it is used, and fixing, or providing a method for fixing, minimum prices for each such use classification which all handlers shall pay, and the time when payments shall be made, for milk purchased from producers or associations of producers. Such prices shall be uniform as to all handlers, subject only to adjustments for (1) volume, market, and production differentials customarily applied by the handlers subject to such order, (2) the grade or quality of the milk purchased, and (3) the locations at which delivery of such milk, or any use classification thereof, is made to such handlers."

7 U.S.C. §§ 601, 602; Waddington Milk Co. v. Wickard, 140 F.2d 97, 101 (2 Cir. 1944). Moreover, plaintiff's own citation to the Report of the Committee on Agriculture and Forestry, S.Rep. No. 1011, 74th Cong., 1st Sess. (1937), suggests that value is a *consideration* that may be taken into account in classifying milk, but does not characterize it as the controlling factor. Pltf.'s Brief at 6. Nor is there reference to value anywhere within the statute itself. Rather, § 608c (5)(A) emphasizes classification according to "the purpose for which it [milk] is *used*" (emphasis added).

Neither the legislative history of the Act, nor the Act itself, is specifically addressed to plaintiff's position. Previous cases, while not controlling on the issue of shrinkage, have generally considered the classification scheme of the Act to be dependent upon the *use* made of the milk by the handler. See, *e. g.*, Lehigh Valley Coop. Farmers, Inc. v. U. S., *supra*, 370 U.S. at 79, 90 S.Ct. 314; Queensboro Farm Products, Inc. v. Wickard, *supra*, 137 F.2d at 975–76; Waddington Milk Co. v. Wickard, *supra*, 140

F.2d at 98; Inter-State Milk Producers' Cooperative v. Butz, 372 F.Supp. 1010, 1014 (E.D.Pa.1974).[9] But cf. Windham Creamery, Inc. v. Freeman, 350 F.2d 978, 980–81 (3 Cir. 1965).

Moreover, if plaintiff's reading of § 608c(5)(A) were correct, it proves too much. Plaintiff endorses the validity of the shrinkage provisions in all other milk marketing orders, yet its view of § 608c (5)(A) would seem to render them all invalid. In those orders where, for example, shrinkage in excess of 2% is always classified as Class I, it is difficult to believe that shrinkage in excess of 2% would be shrinkage of greater value to the handler.[10] On plaintiff's theory of lowest value, such excess shrinkage should not be placed in Class I. Hence, unless plaintiff is inviting the invalidating of the percentage limitation on lowest value shrinkage common to all the milk marketing orders, it appears that handler value is only one factor that enters into the classification of shrinkage. Whether plaintiff can demonstrate that it is the most significant factor is a question best left to the initial decision of the Secretary.[11]

---

**9.** In *Inter-State*, a milk order creating a conclusive presumption that all milk shipped more than 300 miles was used as Class I milk, regardless of the actual use made, was declared invalid. The provision was based upon the belief that only where milk was used in its highest class was the economic return sufficient to warrant shipping such a great distance. The court found such a classification scheme arbitrary, intended only to ease administration of the Act and not pursuant to the authority of the Secretary to classify according to use. "The statute authorizes the Secretary to classify on the basis of *use*. The Secretary is given extremely wide latitude as to what is used for the basis of classification. However, we fail to see how a distance of 300 miles has any bearing on *use*." 372 F.Supp. at 1014 (emphasis added).

**10.** This raises the obverse question of the fairness or arbitrariness of the treatment afforded a Class II handler. Should his shrinkage exceed the stated percentage, it will likely be classified as Class I even if the handler has no actual Class I use. Oak Tree, not adversely affected by such a limitation, does not contest its reasonableness, considering it "a reasonable administrative device in event of inefficient milk losses or faulty record

keeping." Pltf.'s Brief at 21–22. In such circumstances, classification of any shrinkage in excess of the stated percentage would appear, *prima facie*, to be based not on use or on value, but on an ancillary fact—that the Class II handler's inefficiency was not shown to be within the stated percentage. Whether the standards set down in *Inter-State, supra*, preclude such an approach by the Secretary need not be decided here, but it would certainly have a bearing on any overall administrative review of § 1002.42 insofar as it might adversely affect a Class II handler subject to Order 2.

**11.** One possible avenue of productive inquiry below would be to focus on what importance is attributed to handler value in other milk marketing orders, since the question of differing treatment is relevant to this case. See part IV *infra*. In any event, there are certainly at least some suggestions in the findings supporting other orders that imply a continuing effort to correlate shrinkage classification with "the lowest class of each order," 39 F.R. 852, 865–67 (March 5, 1974), often emphasizing in so doing that shrinkage is loss the handler must account for "but for which no direct return is realized." 33 F.R.

■■ Nor would it appear that the classification of shrinkage under Order 2 is wholly arbitrary. On the contrary, since shrinkage is a normal by-product of the operations of the handler, it would seem quite reasonable to classify the lost milk in the proportion to that which remains. Merely because Oak Tree might have been more favorably treated under another order is not reason enough to invalidate Order 2. *Dairylea Cooperative, Inc., supra,* 504 F.2d at 91.

### IV.

Plaintiff's other contention is that Order 2 is invalid by reason of lack of sufficient findings to justify the different treatment accorded shrinkage in the New York-New Jersey area than in all other marketing areas of the country. Plaintiff relies upon the Secretary's own rules governing the issuance of milk marketing orders, 7 C.F.R. § 900, et seq., specifically 7 C.F.R. § 900.13a (1974), which provides in part:

"After due consideration of the record, the Secretary shall render a decision. Such decision shall become a part of the record and shall include (a) *a statement of his findings* and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law or discretion presented on the record . . . . " (Emphasis added.)

Plaintiff also points to 7 U.S.C. § 608c (4),[12] and § 557 of the Administrative Procedure Act, 5 U.S.C. § 557, in support of such requirement. In addition, § 608c(11)(C) provides:

"All orders issued under this section which are applicable to the same commodity or product thereof shall, so far as practicable, prescribe such different terms, applicable to different production areas and marketing areas, as the Secretary finds necessary to give due recognition to the differences in production and marketing of such commodity or product in such areas."

■ A combined reading of these statutory and regulatory commands establishes that when the Secretary concludes, as he might, that differing treatment under the Act from one marketing area to another is warranted, findings supporting that conclusion must be made.

It does appear that the challenged order was issued in compliance with the formal requirements of §§ 608c(3) and (4). It is undisputed that a hearing was held after notice to interested parties, and findings and conclusions were made upon the evidence introduced. Whether the findings so made, 33 F.R. 7194, were justified by the evidence or were sufficient to support the challenged order is another question entirely.

Plaintiff suggests that this court is required by 44 U.S.C. § 1507 to take judicial notice of the contents of the Federal Register, which contains, *inter alia,* the other milk marketing orders,

3478 (Feb. 27, 1968) ; 33 F.R. 7529 (May 15, 1968). It is difficult to see why the lowest class would be chosen initially unless the mention of lack of return to the handler implies at least a tacit recognition that shrinkage is of least value to the handler and ought to be so classified.

However, plaintiff's arguments on this point are not without their own conceptual difficulties. Plaintiff asserts that *"milk used as plant loss* (of lowest possible value) is required by Sec. 608c(5)(A) to be allocated to and valued or priced at the lowest class" (emphasis added). Pltf.'s Brief at 12. But it seems doubtful that any handler ever intentionally *used* the milk it has purchased for the *purpose* of plant loss, nor is shrinkage really a distinct form of use. Rather, it is simply a necessary and inevitable cost of

doing business. Plaintiff has recognized this, stating that "milk which is lost in the course of operations is of course milk without which we cannot operate." Transcript of Oral Argument, April 5, 1974, at 31.

12. Section 608c(4) provides:
"(4) After such notice and opportunity for hearing, the Secretary of Agriculture shall issue an order if he finds, and sets forth in such order, upon the evidence introduced at such hearing (in addition to such other findings as may be specifically required by this section) that the issuance of such order and all of the terms and conditions thereof will tend to effectuate the declared policy of this chapter with respect to such commodity."

and the findings supporting Order 2 as well as all others. Plaintiff asks for a decision in his favor on a bare reading of those orders and findings.[13] However, this would leave still unresolved the substantive issue of the sufficiency and relevancy of the findings.

Plaintiff's contention that the findings respecting Order 2 are ambiguous may have merit. Indeed the findings contained in 33 F.R. 7194, while discusssing the shrinkage provisions at length, appear to offer little justification for markedly different treatment. The only paragraph in the findings relating to this exact issue is as follows:

"The procedure followed under the existing order of assigning shrinkage, within the allowable limits, to the same classes of use as the butterfat accounted for is substantially different from that provided in other Federal orders. Nevertheless, such procedure appears to have precipitated no basic problems in the market and is generally supported by industry. Accordingly, this procedure is continued for skim milk and butterfat, respectively, under the amended order." [14]

Without finally passing on the matter, the court is of the view that such a conclusion seems hardly the type of basis required under § 608c(11)(C), which authorizes such different terms in different marketing orders "as the Secretary finds necessary to give due recognition to the differences in production and marketing of [milk] in such areas." § 608c(11)(C), *supra.* It may well be that § 1002.42 is solidly grounded in milk production and marketing differences peculiar to the New York-New Jersey area, rather than simply a lack of organized opposition thereto by disfavored area handlers.[15] Certainly the statute would seem to require more than the latter and no less than the former. See *Windham Creamery, supra,* 350 F.2d at 981.[16]

### V.

While the court has attempted to offer some guidance to assist the proper disposition of this case, the discussion only serves to make more clear the need for a remand for a full administrative hearing on the issues presented here, where views may be expressed free of the constraints inherent in an appeal of administrative action.

The cause is therefore remanded for further proceedings not inconsistent with parts I and II of the foregoing opinion. 7 U.S.C. § 608c(15)(B)(2).

So ordered.

---

13. The court notes, however, in contrast to the barren record presented by Oak Tree on this issue below, the successful challenge of a milk marketing order made in Abbotts Dairies Division of Fairmont Foods, Inc. v. Hardin, *supra,* upon the ground of absence of evidence to support it. To support that challenge, the record of the promulgation hearing was offered into evidence, as was expert testimony reaffirming the evidence contained in that hearing record. 351 F.Supp. at 563, 565. Oak Tree presented no such evidence at the administrative level below. But see United States v. Mills, n. 7 *supra.*

14. Def.'s Reply Brief, attaching 33 F.R. 7194 as Appendix A thereto, at 3.

15. This is not to suggest that such opposition would have been successful in overturning this or any other milk marketing order. Although handler approval is one of the means by which an order may be promulgated, 7 U.S.C. § 608c(8), the Secretary is authorized to dispense with such approval where, in his judgment, it is necessary to effectuate the declared policy of the Act. 7 U.S.C. § 608c (9). In either case, producer approval is required.

16. Since there is some suggestion to the effect that there are additional findings upholding § 1002.42 in earlier administrative proceedings which have not been brought to the attention of the court, see n. 6 *supra,* no view is expressed as to the adequacy of the findings actually made at any time in support of the challenged regulation.